# IN THE SUPREME COURT OF TEXAS

No. 17-0200

EXXON MOBIL CORPORATION, PETITIONER,

v.

THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS

**Argued September 17, 2018**

JUSTICE GUZMAN delivered the opinion of the Court.

JUSTICE LEHRMANN did not participate in the decision.

For public policy reasons, Texas's no-fault workers' compensation system permits the insurance carrier to recoup all benefits paid to an injured worker out of the "first money" the worker recovers from a liable third party.[1] Carriers may, however, choose to waive this right in exchange for an enhanced premium. Under a standard Texas Department of Insurance endorsement commonly called a "subrogation waiver," an insurance carrier agreeing to a "blanket"

---

[1] TEX. LAB. CODE §§ 417.001-.002; *Wausau Underwriters Ins. Co. v. Wedel*, 557 S.W.3d 554, 558 (Tex. 2018) ("right of recovery" in a standard endorsement includes both subrogation and reimbursement rights); *Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 530 (Tex. 2002) ("For decades, the law has been that, under the Workers' Compensation Act's subrogation provision, 'the first money paid [to] or recovered by the employee, or his representatives, belongs to the compensation carrier paying the compensation, and until it is paid in full, the employee, or his representatives, have no right to any funds.") (original alterations).

waiver of the recoupment right cannot, directly or indirectly, recover benefit payments from "[a]ny person or organization for whom the Named Insured has agreed by written contract to furnish [the] waiver."[2] But a third party meeting that definition can claim the waiver only "with respect to bodily injury arising out of the operations described in the [policy] where [the insured is] required by a written contract to obtain this waiver . . . ." The endorsement's plain language thus invokes the subrogation waiver only when some other contract requires the insured to procure it from the carrier as to a third party and for the operations giving rise to the injury.

In this dispute, a third party claims the benefit of a blanket subrogation waiver by virtue of a written contract with the insured in which the insured agreed to procure a waiver of "all rights of subrogation and/or contribution against [the third party] . . . to the extent liabilities are assumed by [the insured]." The principal issue is whether the subrogation-waiver endorsement incorporates the extrinsic contract's "to the extent liabilities are assumed" limitation and, if so, what that phrase means. Reading the limitation into the endorsement, and limiting "assumed" "liabilities" to contractual indemnities, the court of appeals concluded the subrogation waiver is inoperative as to an injured worker's recovery against the third party because the insured was not contractually obligated to indemnify the third party for the loss.[3]

We reverse and remand. The endorsement waiving the carrier's recovery rights is effective as to the bodily injury claim here because the endorsement refers to another contract only to identify who may claim the waiver and at what operations, but does not refer to, and thus does not incorporate, any other contract limitations.

---

[2] *See Wausau Underwriters*, 557 S.W.3d at 555, 558-60 (the standard endorsement forecloses an insurer's right to recover directly from a liable third party or indirectly after the third party pays the injured employee).

[3] 506 S.W.3d 498, 507-08 (Tex. App.—Houston [1st Dist.] 2016).

## I. Background

Exxon Mobil Corporation hired Savage Refinery Services to perform work at Exxon's Baytown refinery pursuant to Exxon's Standard Procurement Agreement (the Service Contract). While working at the facility, two of Savage's employees were injured by an accidental discharge of hot water. Savage's workers' compensation insurer, the Insurance Company of the State of Pennsylvania (the Carrier), paid compensation benefits to the injured workers. Both workers also sought tort damages from Exxon.

One of the employees settled with Exxon without instituting formal legal proceedings. The other sued Exxon, but ultimately settled out of court. In that lawsuit, which is the progenitor of this appeal, Exxon did not allege Savage was responsible for the accident or had agreed to assume liability for it.[4] However, Exxon filed a third-party action against the Carrier, seeking a declaration that the insurer had waived all recovery rights against Exxon via an endorsement to Savage's workers' compensation policy. That endorsement, the Texas Department of Insurance's standard-form "subrogation" waiver,[5] specifies three conditions for its application:

---

[4] *See* TEX. LAB. CODE § 417.004 ("In an action for damages brought by an injured employee, a legal beneficiary, or an insurance carrier against a third party liable to pay damages for the injury or death under this chapter that results in a judgment against the third party or a settlement by the third party, the employer is not liable to the third party for reimbursement or damages based on the judgment or settlement unless the employer executed, before the injury or death occurred, a written agreement with the third party to assume the liability.").

[5] The endorsement is titled "TEXAS WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS." Tex. Dep't of Ins., TEXAS BASIC MANUAL OF RULES, CLASSIFICATIONS AND EXPERIENCE RATING PLAN FOR WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY INSURANCE, WC 42 03 04 A (1st reprint, Jan. 1, 2000), http://www.tdi.texas.gov/wc/regulation/documents/wcmanual.pdf; *see* TEX. INS. CODE § 2052.002(a) ("The commissioner shall prescribe standard policy forms and a uniform policy for workers' compensation insurance."); *Wausau Underwriters*, 557 S.W.3d at 558-59 (though colloquially referred to as a "subrogation wavier", the standard endorsement does not use that term and, to the extent of any distinction between subrogation and reimbursement rights under the Texas Workers' Compensation Act, applies to both).

3

We [the Carrier] have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization [1] named in the Schedule, but this waiver applies only with respect to [2] bodily injury [3] arising out of the operations described in the Schedule *where [Savage is] required by a written contract* to obtain this waiver from us.[6]

The Carrier did not waive its recovery rights as to specific third parties, so Exxon is not specifically named in the Schedule. Instead, the Carrier agreed to a categorical—or "blanket"— waiver that invokes the subrogation waiver when the insured has contractually agreed to provide it to a particular party, but even then the endorsement applies only if the insured has agreed to provide the waiver for Texas operations causally connected to the injuries:

**Schedule**

1.     ( ) Specific Waiver

       (X) Blanket Waiver

Any person or organization for whom [Savage] has agreed *by written contract* to furnish this waiver.[7]

2.     Operations: [All Texas Operations]

. . . .[8]

The point of contention here is how to determine whether Exxon falls within the subrogation waiver's ambit.

---

[6] Emphasis added.

[7] Emphasis added.

[8] Though "Operations" is blank in the Schedule, the parties agree that it is limited to Texas operations. *See* TEX. DEP'T OF INS., TEXAS WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY MANUAL, WC 42 03 04 A n.2 (1st reprint, July 1, 2011) https://www.tdi.texas.gov/wc/regulation/documents/Endform.pdf; *accord* TEX. DEP'T OF INS., TEXAS BASIC MANUAL OF RULES, WC 42 03 04 A n.2, supra note 5, at 4, http://www.tdi.texas.gov/wc/regulation/documents/wcmanual.pdf. It is immaterial whether a blanket endorsement

Exxon is adamant that the inquiry is constrained to the policy's four corners, asserting "few readers will read the endorsement and [think] its meaning depends on tracking down some separate contract . . . ." The Carrier contends that a contract other than the policy—namely, the Exxon/Savage Service Contract—must be consulted to ascertain whether Savage "has agreed by written contract" and is "required by a written contract" to furnish the subrogation waiver. This, the Carrier argues, accords with the endorsement's plain language and common sense, because Exxon would have no rights under the subrogation waiver if the matter were determined solely from the language within the policy's four corners.

To the extent the Service Contract comes into play, two of its provisions are central to the dispute about the subrogation waiver's applicability—one relates to Savage's insurance-coverage obligations and the other sets out the parties' indemnity agreement. In paragraph 14 of the Service Contract, Savage agreed to secure certain types and minimum limits of insurance and obtain its insurers' waivers of subrogation and contribution rights against Exxon "to the extent" Savage "assumed" "liabilities." In paragraph 12, Savage and Exxon specifically agreed to indemnify each other for personal-injury claims resulting from their own negligence, gross negligence, or willful misconduct, but did not assume liability for claims resulting from the other party's tortious conduct. Accordingly, Exxon and the Carrier agree that if Savage's employees were injured due to Exxon's negligence, as alleged, Savage did not agree to indemnify Exxon for their damages. The hotly contested issue in this case is whether that circumstance has any impact on Savage's agreement to procure a subrogation waiver under paragraph 14.

---

could apply to a covered third party's operations outside of Texas when no limitation is expressed because it is undisputed that Savage's workers were injured at Exxon's Baytown, Texas operations.

According to the Carrier, Savage's agreement to provide a subrogation waiver is conditioned on Savage's assumption of liability and is thus limited to its contractual indemnity obligations. And since Savage did not agree to indemnify Exxon for Exxon's tort liability, Savage did not agree to provide the subrogation waiver to Exxon, a prerequisite to invoking the workers' compensation insurer's subrogation waiver.

Exxon asserts that, if the Service Contract can be consulted at all, it identifies *who* is entitled to a subrogation waiver (Exxon), but no contractual limitations on the obligation to provide the waiver can be considered. In the alternative, Exxon contends the assumption-of-liability limitation extends beyond contractual indemnities and encompasses all of Savage's contractual obligations, including its agreement to secure workers' compensation coverage. So, if Savage agreed to provide workers' compensation coverage for its employees, it "assumed liability" for workers' compensation benefits, thus invoking the subrogation waiver as to the Carrier's statutory right to recoup benefit payments.

The trial court granted summary judgment in Exxon's favor, declaring the Carrier had "waived all contractual and statutory subrogation rights against Exxon" and was "not entitled to reimbursement of the net amount recovered by [the injured worker]." The judgment does not specify the basis for the court's ruling.

In reversing and remanding, the court of appeals adopted the Carrier's view:

Because Savage was not required to indemnify Exxon under the indemnity provisions of section 12 of the Exxon/Savage Contract, it did not "assume liability" under [the] insurance provisions of section 14 of the Exxon/Savage Contract. Because Savage did not "assume liability" for the damages alleged in this suit, it was not contractually obligated to cause its insurer to waive its subrogation rights against Exxon. Because the Exxon/Savage Contract did not require Savage to obtain a waiver of subrogation from [the Carrier] under these circumstances, the policy endorsement containing the waiver by [the Carrier] is not applicable. Thus,

6

we conclude that [the Carrier] has not waived its right to seek subrogation from Exxon, and the trial court erred in holding otherwise.[9]

The court did not reach the Carrier's additional appellate issues challenging the adequacy of Exxon's summary-judgment evidence and arguing the subrogation waiver does not preclude an insurer from treating an employee's third-party recovery as an advance against future benefits.[10]

On petition for review to this Court, Exxon assails the appellate court's analysis as lacking fidelity to our opinions in *In re Deepwater Horizon*[11] and *Gilbert Texas Construction, L.P. v. Underwriters at Lloyd's London.*[12] More specifically, Exxon faults the court for restricting the insurance endorsement's reach based on the terms of an extrinsic document and unduly circumscribing the Service Contract's assumption-of-liability language by limiting it to the contractual indemnities.[13]

---

[9] 506 S.W.3d 498, 507-08 (Tex. App.—Houston [1st Dist.] 2016).

[10] *Id.* at 502, 508.

[11] 470 S.W.3d 452 (Tex. 2015).

[12] 327 S.W.3d 118 (Tex. 2010).

[13] The National Association of Subrogation Professionals filed an amicus brief siding with the Carrier. The Association asserts that blanket endorsements are widely used and are "consistent in that they require reference to an external contract to determine whether they are triggered in a given case." Like the Carrier, the Association opines that "Exxon's argument that the waiver automatically benefits them without reference to the provisions of the Exxon/Savage contract conflicts with the plain language of the standard-form endorsement." The Texas Civil Justice League filed an amicus brief supporting Exxon's position that the insurance policy "nowhere states that it intended to incorporate" an extrinsic document like the Service Contract.

## II. Discussion

## A. Statutory Recoupment Rights

The Texas Workers' Compensation Act permits a subscribing employer's injured employee to recover benefits for work-related injuries on a no-fault basis.[14]  In most cases, those benefits are the employee's exclusive remedy against the employer.[15]

Receipt of workers' compensation benefits does not, however, preclude an employee from suing a potentially liable third party.[16]  But even then the Act's no-fault guarantee comes with special rules governing any tort recovery.  To avoid an end run around the exclusive-remedy bar, the statute requires the employer's contractual assumption of liability to make the employer liable to the third party for any share of the damages:  "[T]he employer is not liable to the third party for reimbursement or damages based on [a] judgment or settlement unless the employer executed, before the injury or death occurred, a written agreement with the third party to assume the liability."[17]  In other words, the exclusive remedy bar protects an injured worker's subscribing employer—Savage, in this case—from liability, both directly and indirectly.  Thus, Savage would not be liable for damages or required to reimburse Exxon for any sums paid in settlement or under a judgment absent a prior written agreement "to assume the liability."[18]

---

[14] TEX. LAB. CODE § 406.031.

[15] *Id.* § 408.001.

[16] *Id.* § 417.001(a).

[17] *Id.* § 417.004.

[18] *See id.*

In addition to limiting third-party recourse against a subscribing employer, any damages recovered by the injured party are subject to the workers' compensation carrier's statutory rights to "reimbursement" and "subrogation."[19] These rights are flip sides of the same coin. The former refers to the statutory mandate that "[t]he net amount recovered by a claimant in a third-party action shall be used to reimburse the insurance carrier for [past and future] benefits,"[20] while the latter refers to the carrier's ability to step into the injured employee's shoes to enforce the third party's liability up to the total benefits the carrier paid or assumed.[21] But unlike equitable subrogation, the special recoupment rules in the Workers' Compensation Act give the insurance carrier the right to "the first money a worker receives from a tortfeasor."[22] That is, under the Act's terms, the employee has no right to any sums recovered from a third party until the carrier "is reimbursed in full."[23] This "first-money" recoupment right "is crucial to the worker's

---

[19] *Id.* §§ 417.001-.002.

[20] *Id.* § 417.002.

[21] *Id.* § 417.001(b); *see id.* (the insurer's subrogation interest may be reduced in accordance with the employer's proportionate responsibility).

[22] *Compare Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 35-36 (Tex. 2008) (the Workers' Compensation Act's terms allow for satisfaction of the insurer's claim in full before the injured worker has a right to any of the funds) *with Ortiz v. Great S. Fire & Cas. Ins. Co.*, 597 S.W.2d 342, 343 (Tex. 1980) ("An insurer is not entitled to [equitable] subrogation if the insured's loss is in excess of the amounts recovered from the insurer and the third party causing the loss."); *see also* TEX. LAB. CODE §§ 417.001(b) ("If the recovery is for an amount greater than the amount of the insurance carrier's subrogation interests, the insurance carrier shall: (1) reimburse itself and pay the costs from the amount recovered; and (2) pay the remainder of the amount recovered to the injured employee or the legal beneficiary."), .002 (any recovery shall first be applied to benefits that have been paid and then treated as an advance against future benefits).

[23] *Ledbetter*, 251 S.W.3d at 36; *see* TEX. LAB. CODE §§ 417.001(b) (setting out order of disbursement from any subrogation recovery from a third party), .002(a), (b) ("The net amount recovered by a claimant in a third-party action shall be used to reimburse the insurance carrier for [past and future] benefits, including medical benefits, that have been [or will be] paid for the compensable injury.").

compensation system because it reduces costs for carriers (and thus employers, and thus the public) and prevents double recovery by workers."[24]

But just as a subscribing employer may subject itself to a third-party claim by agreeing to assume the liability, an insurer's recoupment rights may be contractually waived.[25] Here, the Carrier does not dispute that it has agreed to a limited waiver of its statutory recoupment rights by virtue of the blanket waiver in the standard-form endorsement to Savage's workers' compensation insurance policy. The issue is whether the waiver applies in Exxon's favor as to its settlement with Savage's injured worker, precluding the Carrier from recovering any of the benefits it paid on the claim. Disposition of that issue turns on whether the right to invoke the subrogation-waiver endorsement in Savage's insurance policy is limited by terms in Savage's contract with Exxon and, if so, to what extent and effect.

## B. Invoking the Subrogation Waiver

At bottom, this case involves the construction of a state-promulgated insurance form in the first instance, and to the extent required by that form, the meaning of terms used in a privately negotiated contract. We review these contract-construction issues de novo using settled interpretive principles.[26] As in all contract-construction cases, a contract's meaning depends on

---

[24] *Ledbetter*, 251 S.W.3d at 35. The National Association of Subrogation Professionals asserts that, in addition to direct costs to the workers' compensation system, unrecovered benefits result in a premium increase for insureds because the lack of recovery inflates loss experience.

[25] *Wausau Underwriters Ins. Co. v. Wedel*, 557 S.W.3d 554, 555, 558 (Tex. 2018); *Trinity Universal Ins. Co. v. Bill Cox Constr., Inc.*, 75 S.W.3d 6, 8 (Tex. App.—San Antonio 2001, no pet.).

[26] *See Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017) (Texas courts construe insurance policies using ordinary contract-interpretation rules); *In re Deepwater Horizon*, 470 S.W.3d 452, 464 (Tex. 2015) (construing insurance policy and drilling contract terms under settled contract-interpretation principles).

the contract's language.[27]   Our fundamental objective is to effectuate the parties' intent as expressed by the words chosen to memorialize their agreement[28] or, in the case of a state-promulgated form, to ensure contract terms are construed according to "the ordinary, everyday meaning of the words to the general public."[29] Either way, we afford contract language its plain, ordinary meaning, unless the instrument indicates terms have been used in a technical or specialized sense.[30] Context is important,[31] so we must examine the entire writing and will endeavor to harmonize and give effect to all the provisions so that none are rendered meaningless.[32]

Applying these well-settled contract-construction principles, we hold that the standard subrogation-waiver endorsement directs us to consult the Service Contract to determine whether Savage was "required by a written contract" to obtain a subrogation waiver for Exxon and to determine whether that obligation applies to the operations described in the Schedule, but only to that extent.  Unlike the insurance policies at issue in *In re Deepwater Horizon*[33] and *Ken Petroleum Corp. v. Questor Drilling Corp.*,[34] the standard-form subrogation waiver does not refer to, and

---

[27] *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010); *Progressive Cty. Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003).

[28] *Gilbert Tex. Constr.*, 327 S.W.3d at 126.

[29] *Progressive Cty. Mut. Ins.*, 107 S.W.3d at 551.

[30] *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

[31] *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994).

[32] *Deepwater Horizon*, 470 S.W.3d at 464.

[33] *Id.* at 457-58.

[34] 24 S.W.3d at 355-56.

thus does not incorporate, any limits on coverage that might exist outside the policy's four corners. Accordingly, we do not reach, and need not consider, the effect of any limitation on the scope of coverage in the Service Contract.

### 1. Incorporation by Reference

"[W]e have long held insurance policies can incorporate limitations on coverage encompassed in extrinsic documents by reference to those documents."[35] "Magic words" are not required, but an extrinsic document may not be considered unless the policy clearly manifests an intent to incorporate its terms.[36] "In other words, we determine the scope of coverage from the language employed in the insurance policy, and if the policy directs us elsewhere, we will refer to an incorporated document to the extent required by the policy."[37] Thus, in determining whether the subrogation waiver in Savage's insurance policy applies here, we begin with the policy's four corners.[38] Our analysis does not end there, however, because the policy compels an examination of the Service Contract's terms.[39]

In two places, the standard-form blanket waiver expressly limits the waiver's applicability by reference to the named insured's extrinsic contract obligations. First, the Carrier agreed to waive subrogation rights "against the person or organization named in the Schedule" and the

---

[35] *Deepwater Horizon*, 470 S.W.3d at 460; *see Urrutia v. Decker*, 992 S.W.2d 440, 442 (Tex. 1999) ("Texas law has long provided that a separate contract can be incorporated into an insurance policy by an explicit reference clearly indicating the parties' intention to include that contract as part of their agreement.").

[36] *Deepwater Horizon*, 470 S.W.3d at 460.

[37] *Id.*

[38] *Id.* at 459-60.

[39] *See id.* at 460 ("[W]e determine the scope of coverage from the language employed in the insurance policy, and if the policy directs us elsewhere, we will refer to an incorporated document to the extent required by the policy.").

Schedule, in turn, makes the subrogation waiver operative as to "any person or organization for whom [Savage] has agreed by written contract to furnish this waiver." Second, even as to a person or entity named in the Schedule, the waiver is operative "only with respect to bodily injury arising out of the operations described in the Schedule [i.e., All Texas Operations] where [Savage is] required by a written contract to obtain this waiver from [the Carrier]." The endorsement language thus plainly states that a contract other than the policy determines the waiver's applicability.

Our analysis and conclusion on this point accords with our opinions in *Ken Petroleum* and *Deepwater Horizon*. In both cases, we held that language in the insured's policy necessitated consulting an extrinsic document to determine coverage of a third party's claims. In *Ken Petroleum*, we determined that a subrogation-waiver endorsement in the insured's policy did not apply to an indemnification dispute based on the terms of a drilling contract limiting the insured's subrogation-waiver obligations to "liabilities assumed" by the insured. We explained:

> Questor next points to an endorsement to Ken Petroleum's policy with the Underwriters entitled "WAIVER OF SUBROGATION WHEN REQUIRED BY CONTRACT" which says:
>
> > It is agreed that, with respect to such insurance as is afforded by this Cover Note, the company waives any right of subrogation against the "principal" named below by reason of any payment made on account of injury, including death resulting therefrom or on account of property damage sustained by any person or entity while the assured is engaged in any of the operations described in the Schedule of this Cover Note.
> >
> > "Principal" means any party to whom the named assured is contractually obligated to waive its legal rights of indemnification.
>
> Questor is not a party to the contract of insurance between Ken Petroleum and its Underwriters. Questor must look to its own contract with Ken Petroleum to determine what subrogation rights it may insist that Ken Petroleum require its insurers to waive. Sections 13 and 14.9 of the drilling contract [limiting the waiver obligation to assumed liabilities] require Ken Petroleum to cause its insurers to waive their subrogation rights only with regard to Ken Petroleum's agreement to indemnify Questor for the death of or injury to Ken Petroleum employees and

13

certain others. . . . If Ken Petroleum is not contractually obligated to Questor to enforce a waiver of subrogation, Questor cannot insist that Ken Petroleum assert a waiver of subrogation [as to the insurer and insured's settlement of a wrongful-death liability Questor assumed].[40]

In *Deepwater Horizon*, we addressed a third-party's additional-insured status under various primary- and excess-insurance policies.[41] The third party, an oil-field operator, was not named as an additional insured in the subject policies but those policies (1) defined an "Insured" as "any person or entity to whom the 'Insured' is obliged by oral or written 'Insured Contract' . . . to provide insurance such as afforded by [the] Policy" and (2) automatically extended coverage to additional insureds "where required by written contract."[42] We held that the language in the insurance policies providing additional-insured coverage "where required" and as "obliged" by contract required us to consult the insured's drilling contract with the operator to determine whether those conditions were satisfied.[43]

Like *Ken Petroleum* and *Deepwater Horizon*, if the subrogation-waiver inquiry were constrained to the endorsement's text, Exxon "would have no coverage at all."[44] Accordingly, we must look to the Service Contract to determine whether Savage is required to provide the waiver to Exxon. It does not necessarily follow, however, that circumstances limiting the waiver may also be considered. In that regard, *Deepwater Horizon* and *Ken Petroleum* are distinguishable

---

[40] 24 S.W.3d at 355-56; *see id.* at 353 n.19.

[41] 470 S.W.3d at 455.

[42] *Id.* at 457-58 (original alterations).

[43] *Id.* at 464.

[44] *See id.*; *accord Ken Petrol.*, 24 S.W.3d at 355-56.

14

based on the language in the respective insurance policies, even though language in the respective contracts is substantially similar.

## 2. Contractual Limitations On The Subrogation-Waiver Requirement

In paragraph 14 of the Service Contract, Savage agreed to procure a subrogation waiver on the following terms:

> [Savage] and its insurer(s) providing coverage in this Section shall waive all rights of subrogation and/or contribution against [Exxon] to the extent liabilities are assumed by [Savage] . . . .

The parties debate both the meaning and effect of the assumed-liabilities condition appended to the subrogation-waiver requirement. The Carrier says we must consider the limitation in the Service Contract, and when we do, it directs us to the indemnity agreement in that contract to determine whether Savage was required to provide a subrogation waiver for this loss. Exxon says we cannot consider the limitation at all because the endorsement does not incorporate any extrinsic limitations, and if the limitation is considered, it is satisfied even though Savage has not agreed to indemnify Exxon for this loss.

In *Ken Petroleum* and *Deepwater Horizon*, the insured's contractual obligation to procure a subrogation waiver in the former and additional-insured coverage in the latter was limited in terms that are substantively similar to those in the Exxon/Savage Service Contract.[45] In both cases, we gave effect to those limitations because the insurance policies directed us to do so.[46] But the endorsement here does not.

---

[45] *Deepwater Horizon*, 470 S.W.3d at 457; *Ken Petrol.*, 24 S.W.3d at 355 ("Operator [Ken Petroleum] will, as well, cause its insurer to waive subrogation against Contractor for liability it assumes.") (original alterations).

[46] *Deepwater Horizon*, 470 S.W.3d at 455, 464 (under the drilling contract's terms, developer's status as an additional insured was inextricably entwined with the insured's assumption of liability); *Ken Petrol.*, 24 S.W.3d at

The standard Texas subrogation waiver in Savage's policy specifies three activating requirements: (1) identification of the claimant as a covered party in the Schedule—either named specifically or with covered status conferred by some other written contract—and (2) bodily injury (3) arising from operations meeting the description in the Schedule for which the waiver is required by a written contract. Who. What. Where. Other than defining who and where by reference to an extrinsic contract, no other limitations are referenced, incorporated, or contemplated by the policy language.

Like the form subrogation waiver in Savage's policy, the subrogation waiver in *Ken Petroleum* did not identify covered parties by name, but rather necessitated consulting another contract.[47] But unlike the subrogation waiver here, the *Ken Petroleum* policy defined the waiver's applicability by reference to specific contractual obligations. The underwriters there agreed to waive subrogation rights as to a "principal," defined as "any party to whom the named assured is contractually obligated to waive its legal rights of indemnification."[48] This language required us to examine the indemnity relationship between the insured and another party in an extrinsic document.[49] In doing so, we determined the named insured's only waiver obligation under the extrinsic document was for liabilities it had agreed to indemnify.[50] As the insured had not agreed

355 (a contractor was not entitled to rely on subrogation waivers in insurers' policies absent a contractual right to insist that the operator cause its insurers to waive subrogation and indemnity rights).

[47] 24 S.W.3d at 355.

[48] *Id*.

[49] *See id*.

[50] *Id.* at 355-56.

16

to waive its indemnification rights as to the other party's indemnity obligations, that other party did not meet the policy's definition of "principal."[51] The extrinsic contract's limitation on the subrogation waiver was made relevant at the behest of language in the insurance policy itself. The standard-form subrogation-waiver endorsement at issue here has no parallel requirement.

The policies at issue in *Deepwater Horizon* extended "insured" status to "[a]ny person or entity to whom the 'Insured' is obliged by oral or written 'Insured Contract' . . . to provide insurance such as afforded by [the] Policy."[52] The policies defined an "Insured Contract" as "any written or oral contract or agreement entered into by the 'Insured' . . . and pertaining to business under which the 'Insured' assumes the tort liability of another party to pay for 'Bodily Injury' [or] 'Property Damage' . . . to a 'Third Party' or organization."[53] We explained that "under the express terms of the policies, additional-insured status hinges on . . . the existence of an oral or written contract . . . under which an 'Insured' assumes the tort-liability of another party and is 'obliged' to provide insurance to such other party."[54] The policy further provided that additional insureds were "automatically" covered "where required by written contract."[55]

Consulting the underlying drilling contract, as the policies instructed, and relying on the "where required," "is obliged," and "Insured Contract" policy language, we held the operator's

---

[51] *See id.* (looking to an extrinsic document to determine the scope of subrogation rights because the policy defined "principal" as "any party to whom the named assured is contractually obligated to waive its legal rights of indemnification").

[52] *Deepwater Horizon*, 470 S.W.3d at 457 (original alterations).

[53] *Id.* at 457-58.

[54] *Id.* at 458.

[55] *Id.* at 464.

additional-insured status was limited to the "liabilities assumed by [the insured] under the Drilling Contract."[56] The insurance policies referred to such a limitation, and in the drilling contract, the insured's obligation to provide direct coverage as an additional insured was "inextricably intertwined" with that limitation.[57] The standard-form subrogation-waiver endorsement in Savage's workers' compensation policy does not include similar limitations.

Rather, the endorsement's language is more like the insurance provision at issue in *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*[58] In that case, we held that coverage limitations in the underlying service contract did not limit the scope of additional-insured coverage under a policy provision extending such coverage to "[a] person or organization for whom [the insured has] agreed to provide insurance as is afforded by this policy; but that person or organization is an insured only with respect to operations performed by [the insured] or on [the insured's] behalf, or facilities owned or used by [the insured]."[59] In *Deepwater Horizon*, we distinguished *ATOFINA* on the basis that it "made no reference to the service contract in determining the scope of additional-insured coverage, while the [*Deepwater Horizon*] policies refer[red] to an 'Insured Contract' that require[d] [the named insured] to provide the insurance as a predicate to status as an 'Insured.'"[60] The same distinction is present here.

---

[56] *Id.* at 464-67.

[57] *Id.* at 455-56, 464-65.

[58] 256 S.W.3d 660 (Tex. 2008).

[59] *Id.* at 664.

[60] 470 S.W.3d at 462.

18

As we said in *Deepwater Horizon*, "we determine the scope of coverage from the language employed in the insurance policy, and if the policy directs us elsewhere, we will refer to an incorporated document *to the extent required by the policy*."[61] The standard-form subrogation waiver includes specific limitations, but they differ from the one in the Service Contract. The subrogation waiver does not instruct us to look for an assumption of liability or an agreement to indemnify, and so we must not.

The standard-form subrogation-waiver endorsement refers to an extrinsic contract to identify who may claim its benefits and as to what operations, but unlike *Deepwater Horizon* and *Ken Petroleum*, does not incorporate by reference any other limiting circumstances extrinsic to the policy. Mere reference to a contractual obligation to provide the waiver does not import extrinsic limits on the waiver's application.

Considering the blanket waiver's terms in connection with the Service Contract's terms, Savage was "required" and "agreed by written contract" to "furnish" subrogation waivers to Exxon for its workers' compensation policy. The endorsement does not instruct us to look at the contract any further to determine whether Exxon has covered status under the policy.[62] "Who" is defined by the policy and answered by the Service Contract.

Similarly, the claim at issue is for "bodily injury" "arising out of the operations [in Texas] where [Savage is] required by a written contract to obtain this waiver from [the Carrier]." As the Carrier acknowledges, "the focus is on operations, [which] means that Exxon could be entitled to a waiver for some operations, and not entitled to a wavier for other operations." Say, for example,

---

[61] *Id.* at 460 (emphasis added).

[62] *Id.* ("Unless obligated to do so by the terms of the policy, . . . we do not consider coverage limitations in underlying transactional documents.").

19

Savage agreed in a written contract to provide Exxon a subrogation waiver for work performed at a refinery in Dallas, rather than the Baytown facilities where the Savage workers were injured. If the hypothetical service contract were applied to the claims at issue here, Exxon would still be a "who" under the endorsement's terms and the worker's injury would still satisfy the "what" requirement, but the waiver would nevertheless be inoperative because the injury did not arise out of Texas operations "where [Savage is] required by a written contract to obtain this waiver from [the Carrier]."

The endorsement's two references to external contracts ensure the two requirements connected to those references—people and place—are both satisfied as to the bodily injury claim at issue. These contract references do not purport to incorporate any other extrinsic restraints on coverage. References to external documents are not a license to incorporate limitations not contemplated by the insurance policy. The Carrier's contrary assertion would convert a standard-form insurance endorsement with specified variables into one with limitless variables.[63]

We hold that the standard-form endorsement is operative as to the injured worker's claim in this case because Savage was required, and did agree, to provide Exxon a subrogation waiver for the operations where the injury occurred.[64]

---

[63] With the variables supplied, it becomes even clearer that the endorsement does not reference, and thus does not incorporate, any other extrinsic limitations:

> We [the Carrier] have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against [Exxon], but this waiver applies only with respect to bodily injury arising out of [All Texas Operations] where [Savage is] required by a written contract to obtain this waiver from us.

[64] This conclusion reflects our precision about what the endorsement does and does not say. To be sure, it says "*where* required," not "*when* required." Nonetheless, Exxon suggests in its brief that the endorsement waives the Carrier's subrogation rights "for claims of bodily injury *when* a written contract between Savage and a customer requires Savage to provide such a waiver." (Emphasis added.) We can hardly fault this rephrasing. Indeed, drafters sometimes misuse "the locative *where* . . . for the temporal *when*" without intending to change the meaning of a

### III. Conclusion

The standard-form blanket subrogation waiver in Savage's workers' compensation policy defines its applicability by reference to some other contract, but only to determine who may claim the waiver and whether Savage agreed to provide the waiver for operations causally connected to a bodily injury claim. Considering the Exxon/Savage Service Contract to that extent invokes the Carrier's agreement to waive subrogation claims against Exxon with respect to Savage's injured worker's bodily injury claim. We therefore reverse the court of appeals' judgment and remand the case to that court to consider the Carrier's unaddressed issues.

Eva M. Guzman
Justice

**OPINION DELIVERED:** February 15, 2019

---

sentence or phrase. BRYAN A. GARNER, GARNER'S MODERN ENGLISH USAGE 960 (4th ed. 2016). But this endorsement's use of "where" compels today's holding, even if an endorsement that used "when" might compel a different one. *Cf. URI, Inc. v. Kleberg, Cty.*, 543 S.W.3d 755, 764 (Tex. 2018) ("We therefore 'presume parties intend what the words of their contract say' and interpret contract language according to its 'plain, ordinary, and generally accepted meaning' unless the instrument directs otherwise.").