

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00314-CV

_____

FROST BANK, Appellant

V.

RICHARD SIDNEY KELLEY JR. AND TAMRA KELLEY, Appellees

On Appeal from County Court at Law No. 3
Tarrant County, Texas
Trial Court No. 2018-003722-3

Before Sudderth, C.J.; Womack and Walker, JJ.
Opinion by Justice Walker

**OPINION**

After Appellant Frost Bank attempted to foreclose on a home-equity lien held against the homestead of Appellees Richard Sidney Kelley Jr. and Tamra Kelley, the Kelleys sued to have the lien declared invalid. They argued that the lien was not foreclosure eligible because the loan agreement did not contain all of the terms and conditions required by Article 16, Section 50(a)(6) of the Texas Constitution. Frost Bank countersued for judicial foreclosure and, alternatively, for equitable subrogation. After a bench trial, the trial court declared that the lien was ineligible for foreclosure and awarded Frost Bank a portion of its requested equitable-subrogation relief. Frost Bank appeals from that judgment. We will reverse and remand.

## I. BACKGROUND

### A. THE KELLEYS OBTAIN A HOME-EQUITY LOAN

On July 11, 2007, Richard applied for a home-equity loan with Frost Bank to be secured by the homestead property he and his wife Tamra own in Arlington, Texas (Property).[1] On August 8, 2007, the parties executed the loan agreement, which included, among other documents, a promissory note (Note), a homestead lien contract and deed of trust (Contract and Deed), and an owner acknowledgment (Acknowledgment).

---

[1]Tamra was not a borrower on the Promissory Note but did sign several of the loan documents giving her consent to the loan as required under Section 50(a)(6). *See* Tex. Const. art. XVI, § 50(a)(6)(A) (amended 2018).

2

The Note was made in the principal amount of $344,000 at an interest rate of 6.99%.  It provided that the Kelleys could "pay without penalty all or a portion of the amount owed earlier than it is due" and included the following term:

> HOME EQUITY LOAN.  THIS LOAN IS AN EXTENSION OF CREDIT OF THE TYPE DEFINED BY SECTION 50(a)(6), ARTICLE XVI.  TEXAS CONSTITUTION. . . .  Notwithstanding any provision to the contrary in this Note or any other document, this loan is not secured by any collateral in addition to my homestead.

The Contract and Deed's preamble provided that the "extension of credit evidenced by this homestead lien contract and deed of trust is the type of credit defined by Section 50(a)(6), Article XVI, Texas Constitution."  The Kelleys agreed to make all monthly loan payments and to pay all required taxes for the Property; failure to make these payments constituted default events.  The Contract and Deed also contained the following terms:

> GRANT OF LIEN.  For valuable consideration, [the Kelleys] grant[] a lien under Section 50(a)(6), Article XVI, Texas Constitution in and to [the Property]. . . .
>
>      . . . .
>
> Foreclosure By Court Order Only.  If [Frost Bank] forecloses upon the lien granted in this [Contract and Deed], [Frost Bank] will comply with the applicable rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings as those rules may change from time to time, or [Frost Bank] may exercise such other remedy as may be available to [Frost Bank] for loans made pursuant to the authority of Section 50(a)(6), Article XVI of the Texas Constitution. . . .
>
>      . . . .

Cure Notice. [The Kelleys] acknowledge[] and agree[] that Article XVI, Section 50(a)(6)(Q)(x) of the Texas Constitution provides [Frost Bank] and any holder of this [Contract and Deed] with the right to correct a failure to comply with [Frost Bank's] or holder's obligations under the extension of credit. A notice of non-compliance with applicable law to [Frost Bank] . . . may be in writing and mailed to [Frost Bank's address.]

. . . .

Amendments. . . . To be effective, any change or amendment to this [Contract and Deed] must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

. . . .

Savings Clause. It is agreed that notwithstanding any provision of this [Contract and Deed] to the contrary, in no event shall this [Contract and Deed] require or permit any action which would be prohibited by Section 50(a)(6), Art. XVI, Texas Constitution, and all provisions of this [Contract and Deed] shall be modified to comply fully with Section 50(a)(6), Art. XVI, Texas Constitution.

In the Acknowledgment, the Kelleys confirmed that Frost Bank had met its Section 50(a)(6) obligations and that they had timely received a copy of the "Notice Concerning Extensions of Credit Defined by Section 50(a)(6), Article XVI, Texas Constitution," as required by Section 50(g).[2]

At the loan's closing, $230,800.51 of the loan proceeds were used to discharge the outstanding balance of a prior mortgage lien on the Property, and a release of that lien was recorded soon after.

---

[2]Section 50(g) requires home-equity lenders to provide borrowers—at least twelve days before the loan's closing—a written notice enumerating the mandatory terms and conditions from Section 50(a)(6) for the lien to be valid. *See* Tex. Const. art. XVI, § 50(g) (amended 2018).

4

## B.  THE KELLEYS DEFAULT

In early 2016, multiple taxing authorities sued the Kelleys and Frost Bank for delinquent ad valorum taxes due on the Property.  Frost Bank contacted the Kelleys and informed them that failure to pay the property taxes could lead to foreclosure of its lien on the Property, but the taxes remained unpaid.  Then, starting in June 2016, the Kelleys stopped making the required monthly loan payments to Frost Bank.  The Kelleys have not made any loan payments since then.

That July, Frost Bank sent the Kelleys a formal Notice of Default and Intent to Accelerate, which provided the Kelleys thirty days to cure these defaults.  When the Kelleys did not cure the defaults, Frost Bank sent notice that it was accelerating the maturity of the Note.  Between October 2016 and January 2020, Frost Bank made several payments—totaling $41,530.20—to tax authorities to cover the Kelleys' delinquent taxes.

## C.  FROST BANK SEEKS FORECLOSURE

In October 2016, Frost Bank applied for a Rule 736 expedited foreclosure of its home-equity lien on the Property.  *See* Tex. R. Civ. P. 736.1  The Kelleys responded by arguing that Frost Bank's lien was not foreclosure eligible because the loan agreement did not include all of the loan terms required under Section 50(a)(6).  Specifically, the Kelleys contended that nine terms or conditions were missing from the loan agreement—those enumerated in Section 50(a)(6)(B), (C), (E), (F), (I), (J), (K), (P) and (Q)(x)–(xi).  Frost Bank then sent a letter to the Kelleys on January 18,

5

2017, in which it argued that the loan agreement contained all of the requisite terms and, alternatively, sought to cure any alleged deficiency as provided under Section 50(a)(6)(Q)(x)(c). Frost Bank addressed each of the allegedly missing nine terms, first pointing out where it believed each term was located within the loan agreement. Frost Bank also agreed to adopt each of the allegedly missing terms to the extent that they were missing from the loan agreement. Frost Bank's foreclosure application was denied on February 9, 2017.

Later that year, Frost Bank filed another application for a Rule 736 foreclosure. The Kelleys renewed their objections to the nine allegedly missing terms and conditions. The trial court in that proceeding initially granted Frost Bank's application for foreclosure but later vacated that order pursuant to Rule 736.11 because the Kelleys had filed a timely independent suit to contest Frost Bank's lien. *See* Tex. R. Civ. P. 736.11 (requiring that Rule 736 proceedings be automatically stayed and dismissed if the property owner files a separate, original proceeding that contests the foreclosure). That independent suit is the case before us on appeal.

### D. THE KELLEYS' SUIT

The Kelleys sued to quiet title to the Property. They requested the trial court to declare Frost Bank's home-equity lien ineligible for foreclosure, alleging again that the loan agreement did not contain the nine terms and conditions that they had complained of in the foreclosure proceedings. They further alleged that Frost Bank had failed to correct these deficiencies using any of the Section 50(a)(6)(Q)(x) cure

6

provisions. Frost Bank counterclaimed for a judgment in rem, judicial foreclosure of its home-equity lien, and, alternatively, equitable subrogation to recoup the money it had expended to discharge the Kelleys' prior mortgage and to pay the delinquent property taxes.

### E. BENCH TRIAL

A bench trial was held over two days in April and June 2022. Among other items, the parties offered into evidence the relevant loan documents, notices, various property and tax records, and Frost Bank's January 18, 2017 letter. The Kelleys' chief witness was Alan McCabe, a manager at Frost Bank who had serviced the Kelleys' home-equity loan after it entered delinquency. McCabe testified that he was familiar with the relevant loan documents and was aware that Frost Bank had sent the January 18, 2017 letter to the Kelleys to serve as a "cure notice." He confirmed that this cure notice had been Frost Bank's only written attempt to correct the issue of the allegedly missing terms.

On the topic of the nine allegedly missing terms and conditions, the Kelleys' attorney questioned McCabe concerning only one: the forfeiture provision from Section 50(a)(6)(Q)(x). McCabe testified that the loan agreement may have included the forfeiture provision, but he could not specifically point to its exact location.

On cross-examination, Frost Bank questioned McCabe using a chart (which was not admitted into evidence) containing a checklist showing each of the allegedly missing terms and highlighting where Frost Bank contended each term was located in

7

the loan agreement. Namely, McCabe testified that the "Cure Notice" paragraph from the Contract and Deed referenced the forfeiture provision and allowed for Frost Bank to correct any failures to comply with the constitutional home-equity requirements.

McCabe testified that, at the time of trial, the Kelleys had not made any payments on the loan since May 2016 and that they had also become delinquent on their property taxes. According to McCabe, the Kelleys owed $302,347.29 in unpaid principal on the loan, which included amounts that Frost Bank had paid to cover the taxes.

The Kelleys also testified and did not dispute any of McCabe's testimony. They agreed with one another that they had never received from Frost Bank any documents "to change or re-sign any contracts regarding [the] home[-]equity loan." Nor had they received any additional payment from Frost Bank associated with an offer to refinance and modify the terms of the loan.

During closing arguments, the Kelleys' attorney narrowed the scope of their complaint:

> But in 2016 when we asked the folks at Frost Bank, hey, here's what's wrong, fix it, we told them that their documents did not contain a disclosure of the forfeiture rights that one has under the Texas Constitution, they wrote back and said this fixes it.
>
> . . . .

8

We ask that [the court] find that [Frost Bank] in this case did not remedy its noncompliance with the Texas Constitution, that they didn't meet their obligations in making the forfeiture disclosure.

. . . .

Your honor, when we started this, we pared down the issue to the disclosure of the forfeiture remedy. And while [Frost Bank's] chart may have been well done, those weren't the complaints that we were raising.

## F. FINAL JUDGMENT; FINDINGS OF FACT AND CONCLUSIONS OF LAW

The trial court entered final judgment for the Kelleys, declaring Frost Bank's home-equity lien invalid and not foreclosure eligible, quieting title to the Property in the Kelleys, and denying Frost Bank's counterclaim for judicial foreclosure. On Frost Bank's equitable subrogation claims, the trial court denied its claim for funds paid to discharge the Kelleys' prior mortgage but awarded it $41,530.20 plus interest for the delinquent ad valorem taxes that Frost Bank had paid.

The trial court issued the following relevant findings of fact and conclusions of law:

[Findings of Fact:]

4. The Court finds [the Kelleys] had a home[-]equity loan from Frost Bank on August 8, 2007.

5. The Court finds [the Kelleys] signed a Note and Deed of Trust.

6. The Court finds [the Kelleys] stopped making payments on the home[-]equity loan in February 2016.

. . . .

9

9. The Court finds [the Kelleys] gave notice to [Frost Bank] of the Constitutional defects with the loan in their answer on November 21, 2016.

10. The Court finds [Frost Bank] sent a letter to [the Kelleys'] counsel dated January 18, 2017 acknowledging Frost Bank had notice of the Constitutional defects no later than November 21, 2016 and responded arguing that there were no defects or that the letter cured the alleged defects.

. . . .

[Conclusions of Law:]

33. The Court finds the letter did not meet the requirements of Tex. Const. Art. XVI, § 50 necessary to cure the Constitutional defects.

34. [Frost Bank] did not remedy its non-compliance.

. . .

37. [Frost Bank] did not correct the constitutional deficiency as required.

38. [Frost Bank] did not record an amended loan document as required by Tex. Local Gov't Code § 192.007 [text of the code section omitted] . . . .

39. The home equity loan was not made on the terms and conditions constitutionally required to be "foreclosure eligible." In order to be "foreclosure eligible" the home equity loan must include the terms and conditions set forth in Tex. Const. Art. XVI, sec. 50(a)(6). . . .

40. The lien on the homestead is invalid and not foreclosure-eligible unless it includes the terms outlined in Sections 50(a)(6)(A)–(P) and in Sections 50(a)(6)(Q)(x)–(xi) of Tex. Const. Art. XVI. [Frost Bank] did not admit evidence at trial showing the home equity loan included the terms outlined in Sections 50(a)(6)(A)–(P) and is made on the conditions set forth in Sections 50(a)(6)(Q)(x)–(xi).

41. The Court declares the lien of Frost Bank is void.

. . . .

43. [Frost Bank] is not entitled to equitable subrogation.

44. [Frost Bank's] equitable subrogation counterclaim is barred by limitations.

## II. DISCUSSION

In five issues on appeal, Frost Bank contends that the trial court erred by (1) declaring the home-equity lien ineligible for foreclosure and quieting title in the Kelleys because the loan agreement included the allegedly missing terms either explicitly or by reference; (2) finding that Frost Bank failed to cure any alleged defects; (3) failing to award Frost Bank a judicial foreclosure; and, alternatively, by (4) denying Frost Bank's equitable subrogation claim for funds expended to pay off the Kelleys' prior mortgage and (5) concluding that Frost Bank's equitable-subrogation claim was barred by the statute of limitations.

### A. STANDARD OF REVIEW

"We review the trial court's conclusions of law de novo[ ] and its findings of fact for sufficiency of the evidence." *Hegar v. Am. Multi-Cinema, Inc.*, 605 S.W.3d 35, 40 (Tex. 2020) (citation omitted). A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). As with jury findings, a trial court's fact-findings on disputed issues are not conclusive, and when the appellate record contains a reporter's record, an appellant may challenge those findings for evidentiary sufficiency. *Catalina*

11

*v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We review the sufficiency of the evidence supporting challenged findings using the same standards that we apply to jury findings. *Id.*

We may review conclusions of law to determine their correctness based upon the facts, but we will not reverse because of an erroneous conclusion if the trial court rendered the proper judgment. *City of Austin v. Whittington*, 384 S.W.3d 766, 779 n.10 (Tex. 2012) (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)); *City of Forest Hill v. Benson*, 555 S.W.3d 284, 289 (Tex. App.—Fort Worth 2018, no pet.). That is, because a trial court's conclusions of law are not binding on us, we will not reverse a trial court's judgment based on an incorrect conclusion of law when the controlling findings of fact support the judgment on a correct legal theory. *Super Ventures, Inc. v. Chaudhry*, 501 S.W.3d 121, 127 (Tex. App.—Fort Worth 2016, no pet.); *Wise Elec. Coop., Inc. v. Am. Hat Co.*, 476 S.W.3d 671, 679 (Tex. App.—Fort Worth 2015, no pet.).

## B. RELEVANT LAW

The Texas Constitution allows a lender to obtain a foreclosure-eligible home-equity lien against a borrower's homestead, but only if the loan contains "a litany of exacting terms and conditions" as set forth in Sections 50(a)(6)(A)–(Q). *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 477 (Tex. 2016); *see* Tex. Const. art. XVI, § 50(a)(6)(A)–(Q) (amended 2018). One such condition—the forfeiture provision—provides that the lender will forfeit all principal and interest on the loan if it fails to

12

comply with its loan obligations and does not timely[3] "correct" that failure by employing one of six delineated curative measures. Tex. Const. art. XVI, § 50(a)(6)(Q)(x) (amended 2018). Curative measure (c) is relevant here and provides that deficient home-equity loans can be cured by:

> (c) sending the owner a written notice modifying any other amount, percentage, term, or other provision prohibited by this section to a permitted amount, percentage, term, or other provision and adjusting the account of the borrower to ensure that the borrower is not required to pay more than an amount permitted by this section and is not subject to any other term or provision prohibited by this section[.]

*Id.* § 50(a)(6)(Q)(x)(c).

### C. ALLEGEDLY MISSING TERM INCORPORATED BY REFERENCE

In its first issue, Frost Bank argues that the trial court erred by concluding that its home-equity lien was invalid and not foreclosure eligible because the loan agreement did not contain the requisite Section 50(a)(6) terms and conditions. Frost Bank contends that the Kelleys narrowed their challenge at trial to a single allegedly missing condition: the forfeiture provision from Section 50(a)(6)(Q)(x). It then argues that the loan agreement adequately incorporated the forfeiture provision by reference, thus rendering Frost Bank's lien foreclosure eligible. In response, the Kelleys concede that "the main argument at trial concerned the issue of the disclosure of the forfeiture

---

[3]A lender has sixty days to correct the deficiency from the time the borrower notifies the lender of that deficiency. Tex. Const. art. XVI, § 50(a)(6)(Q)(x) (amended 2018).

remedy," but they disagree that Frost Bank incorporated that provision by reference.[4]

They argue that Frost Bank made only general allusions to Section 50(a)(6) that were not specific enough to incorporate Section (Q)(x)'s forfeiture provision by reference. We agree with Frost Bank.

The Kelleys stipulated at trial and concede on appeal that their only challenge to the validity of Frost Bank's lien is that the loan agreement omitted the Section 50(a)(6)(Q)(x) forfeiture provision. "A stipulation is an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys respecting some matter incident thereto. . . . Where a stipulation limits the issues to be tried, those issues are excluded from consideration." *In re C.C.J.*, 244 S.W.3d 911, 921 (Tex. App.—Dallas 2008, no pet.). At trial, the Kelleys' attorney stated that they had "pared down" their complaint to the alleged omission of the forfeiture provision and requested a finding only that Frost Bank "[had not met] their obligations in making

---

[4]In their appellees' brief, the Kelleys also argue—for the first time—that the loan agreement omitted terms 50(a)(6)(D), (G), and (H). They base this argument on the fact that Frost Bank does not reference the location of these three terms in its appellant's brief, and, thus, that Frost Bank effectively admits to their omission. Because the Kelleys have never made this argument before, we need not address whether terms (D), (G), and (H) were missing from the loan agreement because a party cannot raise new claims on appeal. *See Gunn v. Sandalwood Mgmt. Inc.*, No. 02-23-00254-CV, 2024 WL 2202019, at *3 (Tex. App.—Fort Worth May 16, 2024, pet. filed) (mem. op.). Further, even if the Kelleys had previously maintained that these three terms were missing, a quick review of the loan agreement shows that they were included: term (D) is located in the Contract and Deed's "Foreclosure by Court Order Only" paragraph; term (G) is located in the Note's "Prepayment" paragraph; and term (H) is located in the Note's "Home Equity Loan paragraph."

the forfeiture disclosure." Thus, our analysis will focus on whether the trial court erred by concluding that the loan agreement omitted the forfeiture provision.

Documents and terms incorporated into a contract by reference "become part of the contract." *Gross v. WB Tex. Resort. Cmties., L.P.*, No. 02-12-00411-CV, 2014 WL 7334950, at *3 (Tex. App.—Fort Worth Dec. 23, 2014, no pet.) (mem. op.). As we stated in *Gross*,

> However, such documents must actually be incorporated—the language used is unimportant, but the signed document must "plainly refer[ ]" to the document, which "requires more than merely mentioning the document." *Bob Montgomery Chevrolet, Inc. v. Dent Zone Co.*, 409 S.W.3d 181, 189 (Tex. App.—Dallas 2013, no pet.). The language of the signed document must show that the parties intended for the other document to become a part of the agreement. *Id.* at 190. ("[T]he referring language in the original document must demonstrate the parties intended to incorporate all or part of the referenced document.").

*Id.*; *see In re Estate of Renz*, 662 S.W.3d 531, 537 (Tex. App.—El Paso 2022, pet. denied) ("[S]o long as the intent to incorporate an extrinsic document or its terms is clearly manifested, no "magic words" are required."); *Bob Montgomery Chevrolet, Inc.*, 409 S.W.3d at 189–93 (collecting cases holding that extrinsic or unattached documents were incorporated by reference); *see also Exxon Mobil Corp. v. Ins. Co. of State*, 568 S.W.3d 650, 657 (Tex. 2019) ("[W]e have long held insurance policies can incorporate limitations on coverage encompassed in extrinsic documents by reference to those documents. "Magic words" are not required, but an extrinsic document may not be considered unless the policy clearly manifests an intent to incorporate its terms.").

Further, statutes and other laws can also be incorporated into contracts by reference. *See Pepper Lawson Horizon Int'l Grp., LLC v. Tex. S. Univ.*, 669 S.W.3d 205, 212 (Tex. 2023); *City of Houston v. Williams*, 353 S.W.3d 128, 144 (Tex. 2011) ("We of course do not hold that a statute cannot be incorporated by reference into a contract—as mentioned above, the trial court may conclude that at least some portions of [the relevant statute] were incorporated by reference into the unilateral employment contract at issue here."); *see also* Restatement (Second) of Conflict of Laws § 187, cmt. on subsection (1) (1971) ("The parties, generally speaking, have power to determine the terms of their contractual engagements. They may spell out these terms in the contract. In the alternative, they may incorporate into the contract by reference extrinsic material which may, among other things, be the provisions of some foreign law.").

We see no reason why these principles should not apply to home-equity loan agreements, and the Texas Supreme Court in *Garofolo* signaled that the forfeiture provision can be incorporated by reference into a home-equity loan. *See Garofolo*, 497 S.W.3d at 479 & n7 (explaining that the home-equity loan in that case incorporated the forfeiture remedy where it cited to Section 50(a)(6)(Q)(x), though it did not recite the provision verbatim).

Here, although the loan agreement does not include a verbatim recitation of the lengthy forfeiture provision, the Contract and Deed's "Cure Notice" paragraph referred specifically to the forfeiture provision. It stated that "Section 50(a)(6)(Q)(x)

16

of the Texas Constitution" gave Frost Bank the right to correct any loan deficiencies upon receiving a notice of noncompliance from the Kelleys. Beyond this, the loan agreement repeatedly refers to Chapter 50(a)(6) and makes it clear that the Kelleys were granting Frost Bank a foreclosure-eligible home-equity lien. We hold that this shows a clear intent by the parties to incorporate the Section (Q)(x) forfeiture provision as a term into the loan agreement. *See Gross*, 2014 WL 7334950, at \*3. Accordingly, we also hold that the trial court erred by concluding that Frost Bank's lien was invalid on the basis that the loan agreement did not include the requisite Section 50(a)(6) terms and conditions, and we sustain Frost Bank's first issue.

### D. ALLEGED DEFICIENCY LIKELY CURED

In its second issue, Frost Bank contends that—even if the loan agreement did not include the requisite Section 50(6)(a) terms and conditions—its January 18, 2017 letter to the Kelleys cured this deficiency under the Section 50(a)(6)(Q)(x)(c) curative measure. In light of our holding on Frost Bank's first issue that the loan agreement incorporated the forfeiture provision by reference, we need not reach its second issue. See Tex. R. App. P. 47.1. However, we will note that, had the loan agreement omitted the forfeiture provision as alleged by the Kelleys, the January 18 letter likely cured the issue.

Curative measure (Q)(x)(c) provides that a lender's written notice sent to the borrowers can modify any noncompliant term or provision in the loan. Tex. Const.

17

art. XVI, § 50(a)(6)(Q)(x)(c) (amended 2018). Of a lender's obligation to cure a

noncompliant home-equity loan, the Texas Supreme Court has explained:

> Does a lender "correct" simply by performing one of the six corrective measures even if none addresses the borrower's complaint? Or does a lender "correct" by actually fixing the problem of which the borrower complains? Common usage of the word and common sense suggests the latter. *See Harris Cnty. Hosp. Dist.* [*v. Tomball Reg'l Hosp.*], 283 S.W.3d [838,] 842 [(Tex. 2009)] (When construing the constitution, "we interpret words as they are generally understood."). To "correct" means "to make or set right" or "remove the faults or errors from." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 511 (2002). Under this definition, performance of an irrelevant corrective measure in willful blindness to whether it addresses the borrower's complaint can hardly be said to "correct" anything.
>
> Moreover, the constitution invokes forfeiture when a lender "fails to correct the failure to comply." *See* TEX. CONST. art. XVI, § 50(a)(6)(Q)(x). The "failure to comply" is a reference to the lender's original transgression: its "fail[ure] to comply with the lender's or holder's obligations under the extension of credit." *Id.* Again, the constitution insists not on technical compliance with a corrective measure but on actually fixing the problem.

*Garofolo*, 497 S.W.3d at 481–82.

Here, the Kelleys have been unequivocal in their complaint that they "do not

allege that the [loan] require[d] or permit[ted] any action which would be prohibited

by Section 50(a)(6) . . . but that the loan is not 'foreclosure eligible' because of the

omission of the required terms. . . ." To fix this perceived problem, Frost Bank sent

its January 18 letter, in which it explicitly adopted and bound itself to each of the

allegedly missing terms and conditions, including the forfeiture provision.

18

Thus, reading the requirements of curative measure (Q)(x)(c) alongside *Garofolo's* instructions, Frost Bank needed only to disclose and agree to the forfeiture provision in writing. Further, the Contract and Deed provided that "any change or amendment" to the contract would be effective if it was in writing and "signed by whoever w[ould] be bound or obligated by the change or amendment." Frost Bank's letter was in writing, timely sent to the Kelleys' attorney, included verbatim the full text of the forfeiture provision (and the other allegedly missing terms and conditions), and notified the Kelleys that Frost Bank agreed to be bound by those terms. Accordingly, had we reached this issue, we likely would have held that Frost Bank's letter "actually fix[ed]" the problem. *See id.*

### E. FROST BANK ENTITLED TO FORECLOSURE

In its third issue, Frost Bank argues that the trial court erred by denying its counterclaim for judicial foreclosure because the undisputed evidence proved its entitlement thereto. We agree.

An appellate court conducting a legal sufficiency review cannot disregard undisputed evidence that allows for only one logical inference. *City of Keller v. Wilson*, 168 S.W.3d 802, 814–15 (Tex. 2005). "By definition, such evidence can be viewed in only one light, and reasonable [factfinders] can reach only one conclusion from it. [Factfinders] are not free to reach a verdict contrary to such evidence; indeed, uncontroverted issues need not be submitted to a [factfinder] at all." *Id.*

19

A home-equity lender is entitled to judicial foreclosure if it proves (1) the existence of a debt, (2) secured by a lien on homestead property as allowed by the Texas Constitution, (3) default on the financial obligation has occurred, (4) the property subject to the lien is the same property on which the movant seeks to enforce the lien, and (5) the borrower received notice of default and acceleration. *Benbrook Econ. Dev. Corp. v. Nat'l Bank of Tex.*, 644 S.W.3d 871, 874 (Tex. App.—Fort Worth 2022, no pet.); *Babineaux v. Citimortgage, Inc.*, No. 02-17-00124-CV, 2017 WL 6616239, at *5 (Tex. App.—Fort Worth Dec. 21, 2017, pet. denied) (mem. op.); *see Rinard v. Bank of Am.*, 349 S.W.3d 148, 152 (Tex. App.—El Paso 2011, no pet.).

The material evidence related to Frost Bank's counterclaim is undisputed and establishes all of the elements for judicial foreclosure:  (1) A debt existed between the Kelleys and Frost Bank created by the Note; (2) the Contract and Deed secured a home-equity lien on the Property as allowed under Section 50(a)(6) of the Texas Constitution; (3) the Kelleys defaulted on the debt by failing to make the requisite monthly payments and by becoming delinquent on their property taxes; (4) Frost Bank's lien is on the Property, and Frost Bank seeks enforcement through foreclosure of the lien and sale of the Property; and (5) Frost Bank notified the Kelleys that it intended to accelerate the Note because they were in default for failing to pay their property taxes and monthly loan payments.

We hold that the undisputed evidence proved Frost Bank's entitlement to judicial foreclosure as a matter of law and sustain its third issue.  We need not reach

Frost Bank's remaining two issues on its alternative request for equitable subrogation. *See* Tex. R. App. P. 47.1.

## III. CONCLUSION

Having sustained issues one and three, we reverse the trial court's judgment and remand the case to the trial court for issuance of an order of foreclosure and further proceedings consistent with this opinion. *See Cooksey v. Sinder*, 682 S.W.2d 252, 253 (Tex. 1984) (reversing and remanding to trial court for rendition of foreclosure order); *Cowboy's Retail & Wholesale Beverage Distrib., LLC v. Davis*, No. 12-19-00249-CV, 2020 WL 4463126, at *10 (Tex. App.—Tyler July 31, 2020, pet. denied) (mem. op.) (same); *Gateway Estates Homeowners Ass'n, Inc. v. Larry*, No. 05-14-00689-CV, 2015 WL 2264669, at *2 (Tex. App.—Dallas May 14, 2015, no pet.) (mem. op.) (same).

/s/ Brian Walker

Brian Walker
Justice

Published

Delivered: October 17, 2024