Justice Johnson filed a dissenting opinion, in which Justice Boyd joined.
This case is about an unambiguous endorsement to a workers' compensation insurance policy. The Court concludes that the endorsement not only waived Wausau Underwriters Insurance Company's (Wausau) right of subrogation[1] as to Western Refining Company, L.P. (Western), but also Wausau's right of reimbursement from amounts Western paid to Cactus Transport, Inc.'s (Cactus) employee, James Wedel.[2] There is a decided and *561 recognized difference between an insurer's right of subrogation and its right of reimbursement. See Fortis Benefits v. Cantu , 234 S.W.3d 642, 645 (Tex. 2007) (involving a health insurance policy with separate clauses[3] addressing the rights of subrogation and reimbursement which "conferred on [insurer] two separate contractual rights of recovery, one styled 'subrogation' and one styled 'reimbursement.' ").
I agree that the endorsement waived the statutory subrogation right afforded Wausau by section 417.001 of the Workers' Compensation Act (Act).See TEX. LAB. CODE § 417.001. But I disagree that the endorsement waived the separate statutory right to reimbursement afforded by section 417.002. Id. § 417.002.
There are several problems with the Court's position. First, the Act expressly distinguishes between a carrier's right of subrogation and its right of reimbursement, as demonstrated in part by their being addressed in separate sections of the statute. See id. §§ 417.001, .002. Both are favored and are integral to success of the workers' compensation system. See, e.g. , State Office of Risk Mgmt. v. Carty , 436 S.W.3d 298, 304 (Tex. 2014) (stating that protection of these rights is the "primary purpose" of Labor Code sections 417.001 (subrogation) and 417.002 (reimbursement) ); Tex. Mut. Ins. Co. v. Ledbetter , 251 S.W.3d 31, 35 (Tex. 2008) (stating that first-money reimbursement is crucial to the workers' compensation system and prevents double recovery by workers). Yet the Court effectively ignores the distinction the statute makes between the two. Second, the endorsement on which Wedel bases his argument was obtained by Wedel's employer, Cactus, to comply with Western's written contractual requirement that Cactus's workers' compensation policy be endorsed with a waiver of the carrier's right of subrogation. The requirement was not that the policy be endorsed to waive the carrier's right to both subrogation and reimbursement. Third, the endorsement to Wausau's policy, according to its plain, explicit language, only precluded Wausau from "enforc[ing] [its] right" against Western to recover for payments Wausau paid to Cactus's employees. It did not reference and did not waive Wausau's right to reimbursement if Cactus's employees recovered on claims against third parties, such as Western.
I respectfully dissent.
*562 I. Subrogation and Reimbursement in the Act
Texas enacted its first workers' compensation legislation in 1913. See Act of April 16, 1913, 33rd Leg., R.S., ch. 179, 1913 Tex. Gen. Laws 429, amended by Act of Mar. 28, 1917, 35th Leg., R.S., ch. 103, 1917 Tex. Gen. Laws 269. The Legislature amended the Act in 1917 to provide that an employee injured during the course of employment for an employer that provided workers' compensation insurance had an election if the injury was caused by a third party: the employee could elect to receive workers' compensation or pursue a third-party action against the alleged tortfeasor. See Fort Worth Lloyds v. Haygood , 151 Tex. 149, 246 S.W.2d 865, 867 (1952). If the employee elected to receive workers' compensation, then the carrier was "subrogated to the rights of the injured employ[ee] in so far as may be necessary and may enforce in the name of the injured employ[ee] or of his legal beneficiaries or in its own name and for the joint use and benefit of said employ[ee] or beneficiaries and the [carrier] the liability of said other person." Id. (quoting Act of Mar. 28, 1917, 35th Leg., R.S., ch. 103, § 6a, 1917 Tex. Gen. Laws 269, 285, repealed by Act of Dec. 11, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(10), 1989 Tex. Gen. Laws 1, 114). The Legislature periodically amended the Act. As relevant to this case, the amendments refined provisions regarding the carrier's being subrogated to the rights of an injured employee[4] against third parties liable for the injury and the rights of the injured employee regarding such third parties. See, e.g. , Act of Mar. 28, 1917, 35th Leg., R.S., ch. 103, § 6a, 1917 Tex. Gen. Laws 269, 285 (repealed 1989).
In 1993, the Legislature adopted the current Act. TEX. LAB. CODE tit. 5. Section 417.001 of the Act (1) expressly authorizes an injured employee to pursue both workers' compensation benefits and an action against third parties who caused the injury; (2) expressly provides a right of subrogation to the carrier and gives the carrier the right to enforce its subrogation right in the name of the employee; and (3) provides that if the carrier recovers an amount greater than its subrogation interest from a third party, then after the carrier reimburses itself and pays its costs from the amount recovered, it is to pay the remainder to the employee:
(a) An employee or legal beneficiary may seek damages from a third party who is or becomes liable to pay damages for an injury or death that is compensable under this subtitle and may also pursue a claim for workers' compensation benefits under this subtitle.
(b) If a benefit is claimed by an injured employee or a legal beneficiary of the employee, the insurance carrier is subrogated to the rights of the injured employee and may enforce the liability of the third party in the name of the injured employee or the legal beneficiary.... If the recovery is for an amount greater than the amount of the insurance carrier's subrogation interest, the insurance carrier shall:
(1) reimburse itself and pay the costs from the amount recovered; and
(2) pay the remainder of the amount recovered to the injured employee or the legal beneficiary ....
Id. § 417.001 (emphasis added). A separate section of the Act-section 417.002-addresses a carrier's right of reimbursement *563 in the event an injured employee asserts a claim against a third party because of the injury and makes a recovery. That section requires the employee to reimburse the carrier for benefits the carrier paid to or for the employee's benefit, but allows the employee to retain the balance subject to the carrier's right to offset any future benefits by the amount of the balance:
(a) The net amount recovered by a claimant in a third-party action shall be used to reimburse the insurance carrier for benefits, including medical benefits, that have been paid for the compensable injury.
(b) Any amount recovered that exceeds the amount of the reimbursement required under Subsection (a) shall be treated as an advance against future benefits, including medical benefits, that the claimant is entitled to receive under this subtitle.
(c) If the advance under Subsection (b) is adequate to cover all future benefits, the insurance carrier is not required to resume the payment of benefits. If the advance is insufficient, the insurance carrier shall resume the payment of benefits when the advance is exhausted.
Id. § 417.002 (emphasis added).
Manifestly, the Act distinguishes between the carrier's right of subrogation and its right of reimbursement-and those are two different rights. See Fortis Benefits , 234 S.W.3d at 645. Section 417.001 expressly grants the carrier a statutory right of subrogation and expressly authorizes the carrier to bring suit directly against a third party to "enforce the liability of the third party" to the injured employee. TEX. LAB. CODE § 417.001. The statute authorizes the carrier to prosecute the subrogation claim in order to recover the benefits it has paid and to offset the benefits it might owe to the employee in the future by any excess recovered by, or on behalf of, the injured employee, regardless of whether the injured employee chooses to pursue a claim against the third party. See id. And if it does so, it is to "reimburse itself and pay the costs from the amount recovered," then pay the remainder to the injured employee. Id. "Costs" include the carrier's attorney's fees. E.g. , Jones v. Liberty Mut. Ins. Co. , 745 S.W.2d 901, 902 (Tex. 1988).
Section 417.002, on the other hand, separately and expressly gives carriers only the right to receive reimbursement in the event the employee recovers from a third party. See TEX. LAB. CODE § 417.002. Section 417.002 does not empower the carrier to proceed, or even to make claims, against, third parties in order to enforce rights the carrier might have pursuant to the carrier's payments to and for the employee's benefit in the past or as to those which the Act would require it to pay in the future. Id. Nor does section 417.002 entitle the carrier to both reimbursement for payments it made to and for the employee's benefit and recovery of its costs-such as attorney's fees-out of the recovery from a third party. See id. Thus, if the carrier waives its right to subrogation under section 417.001, section 417.002 still specifically provides the carrier a separate right to reimbursement. But, under such circumstances, section 417.002 effectively relegates the carrier to paying benefits and then waiting on the employee to prosecute a third-party action. If the employee chooses not to do so, or if the employee does not succeed in recovering on a third-party action, then the carrier has no pathway for recovering from a third party for the benefits it paid, or will pay, to the employee. Under section 417.002, it is only if the employee recovers from a liable third party that the carrier has the right to be reimbursed, and even then, the statute does not give the carrier the right to *564 recover its costs in addition to reimbursement for the amounts paid.
In sum, where the carrier has subrogation rights under section 417.001, it is entitled to directly bring and directly participate in suits against third parties. Under that section, the subrogated carrier is in charge of its own destiny as to prosecuting a third-party claim to recoup payments it has made to the injured employee, obtaining credit for those it is obligated to make in the future, and recovering its costs, including attorney's fees, in addition to reimbursement. When the carrier has only reimbursement rights pursuant to section 417.002, it is neither in charge of its own destiny vis-a-vis prosecuting a third-party claim nor statutorily entitled to recover its costs in addition to the amount it paid, or will pay, to the employee from the amount received from the third party.
So when does the statutory language matter? That is, in which situations does a carrier not have subrogation rights but has only reimbursement rights? As explained below, under the clear, plain language of sections 417.001 and 417.002, this is one such situation.
II. The Terminal Agreement and the Policy Endorsement
Western and Cactus entered into an "Asphalt Terminal Access Agreement" (Terminal Agreement) that required Cactus to carry insurance, including workers' compensation insurance. As related to this matter, the Terminal Agreement contains the following provision regarding Cactus's workers' compensation insurance:
The insurance ... shall be ENDORSED to contain a waiver of subrogation against the WESTERN ENTITIES ....
(Emphasis added).
Wausau was the workers' compensation carrier for Cactus. Pursuant to the Terminal Agreement, Cactus purchased an endorsement to its policy entitled "Texas Waiver of Our Right to Recover from Others Endorsement." The endorsement provides as follows:
We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule , but this waiver applies only with respect to bodily injury arising out of the operations described in the Schedule where you are required by written contract to obtain this waiver from us.
This endorsement shall not operate directly or indirectly to benefit anyone not named in the Schedule.
The premium for this endorsement is shown in the Schedule.
(Emphasis added). In the Schedule, the endorsement specified that it applied as follows:
(X) Blanket Waiver
Any person or organization for whom the Named Insured has agreed by written contract to furnish this waiver.
As the Court notes, the endorsement is a standard form promulgated by the Texas Department of Insurance (TDI). See TEX. DEP'T OF INS., TEXAS WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY MANUAL : WC 42 03 04 A (2d reprt. 2011). There is no dispute that Western and its affiliates (the Western entities) were the entities for which Cactus agreed, by written contract, to obtain an endorsement waiving the insurer's subrogation rights.
There is also no dispute that Wedel is not listed in the "Schedule" section of the policy. Accordingly, the endorsement expressly excludes him from being benefitted by the endorsement "directly or indirectly."
*565 III. The Meaning of the Language Is Clear
The Court says that the actual intent of the parties when entering into workers' compensation contracts in Texas is immaterial because the policy forms are mandated by a state agency. Ante at 557 (citing Progressive Cty. Mut. Ins. Co. v. Sink , 107 S.W.3d 547, 551 (Tex. 2003) ). It also notes that "[i]n construing such forms, we strive to 'determine the ordinary, everyday meaning of the words to the general public.' " Ante at 557 (quoting Progressive Cty. Mut. Ins. Co. , 107 S.W.3d at 551 ). The problem is that the Court does not adhere to this latter statement regarding construing this form.
As related to this controversy, the Terminal Agreement was simple and clear. It required Cactus to maintain workers' compensation insurance that contained a "waiver of subrogation against the Western Entities," with "Western Entities" being defined as "Western, its parent, subsidiary and affiliated companies, and their respective officers, agents and employees." What the contract did not require was waiver of the carrier's statutory right of reimbursement, as is provided for by section 417.002 of the Act.
The endorsement to Cactus's policy began by reiterating Wausau's statutory right to recover payments it made under the policy "from anyone liable for an injury covered by this policy." In the next sentence, Wausau agreed that it would "not enforce our right against the person or organization named in the Schedule, but this waiver applies only ... where you are required by a written contract to obtain this waiver from us." The endorsement contained no additional language waiving rights as to any other person or entity. And the written contract between Cactus and Western required only that the workers' compensation policy be endorsed "to contain a waiver of subrogation against the WESTERN ENTITIES."
The Court concludes that "the waiver of a carrier's 'right to recover' from a third party named in the schedule includes both a direct recovery from [Western] and an indirect recovery from proceeds paid by [Western] to an injured employee," such as Wedel. Ante at 558. It further posits that "[t]here is no meaningful difference between the two." Ante at 558. I disagree with both conclusions.
As to the first statement, the policy waives only Wausau's right to recover from Western. Recovery by Wausau from Wedel, regardless of whether those funds originated with Western, is not waived by the policy language because under these facts, Wedel is not a person "liable for an injury covered by this policy." The Court asserts that a reading of the language to waive only subrogation rights against third parties instead of waiving both subrogation rights as well as reimbursement rights, as referenced in section 417.002, "undermines the rationale for having such a waiver in the first place." Ante at 559. The response to that statement is four-fold. First, the endorsement language specifies that it precludes Wausau from exercising its rights "against the person or organization named in the Schedule," which is just what Western contracted for. Second, the endorsement unambiguously and simply specifies that the endorsement "shall not operate directly or indirectly to benefit anyone not named in the Schedule." Wedel is not named in the schedule, yet the Court's interpretation manifestly benefits him both directly and indirectly. And there is no evidence or contention that Western's contractual requirement for waiver of subrogation by the carrier was intended to benefit Cactus or its employees who might be injured. Third, the Act specifies that carriers have rights of both subrogation as *566 to third parties liable for injuries to covered employees and reimbursement in the event the carrier does not have or does not assert a right of subrogation against a third party like Western. And fourth, Western's requirement was transparently intended to protect the interests of the Western Entities, as specified in its contract with Cactus and as discussed below, not to benefit Cactus's employees.
As to the Court's second statement, a brief review of the previous discussion regarding subrogation and reimbursement, as addressed by sections 417.001 and 417.002, demonstrates that there indeed is a meaningful difference in how the two are treated by the Act. First, the Act addresses the two in different sections. TEX. LAB. CODE §§ 417.001, .002. Second, an insurer who is subrogated to the rights of another-such as Wausau is, or would be except for the waiver, subrogated to the rights of Wedel-steps into the shoes of the party to whose rights it is subrogated and obtains all the rights of that party related to recovery of amounts paid to it. See Guillot v. Hix , 838 S.W.2d 230, 232 (Tex. 1992) (stating that the rights conferred by subrogation are derivative of the subrogor's interests, to which the subrogee succeeds). The right of reimbursement in section 417.002 does not afford the carrier such extensive rights and, in most instances, will result in a lesser recovery than would be obtained under section 417.001.
Further, the Court goes beyond the language of the endorsement and talks about the "rationale for having such a waiver." Ante at 559. But "rationale" does not trump the express language of the endorsement in context of the statutory provisions. By implying that it does, the Court second-guesses and encroaches on the Legislature's exercise of its policy-making function when it enacted sections 417.001 and 417.002 and their clear, separate treatment of subrogation and reimbursement. See Town of Flower Mound v. Stafford Estates Ltd. , 135 S.W.3d 620, 628 (Tex. 2004) ("[T]he State's public policy is reflected in its statutes." (quoting Tex. Commerce Bank, N.A. v. Grizzle , 96 S.W.3d 240, 250 (Tex. 2002) ) ). Further, the Court's "rationale" discussion fails to justify its position. The rights of subrogation and reimbursement are distinct and have different characteristics, as noted above. A waiver as to subrogation alone provides value to both a policy holder and potential third-party defendant. A waiver of subrogation prevents claims and lawsuits brought by a carrier-whose business generally is adjusting and paying claims with money received through premiums and collateral activities like recovering on subrogation claims and litigating regularly-to recover benefits paid to covered employees, even if the employees choose not to bring suit. This alone would be worth a premium to a policy holder, such as Cactus, that is seeking to interact or do business with an entity such as Western. And it would be of value to Western to have a workers' compensation carrier, whose business model includes litigating, removed from the decision-making process regarding potential third-party claims and suits against Western. Finally, even if Western intended to acquire a waiver as to both subrogation and reimbursement (an intent not expressed in the simple, clear language of its agreement with Cactus), we have consistently held that the intent of parties to an insurance contract does not matter-it is the policy language that matters. E.g. , Greene v. Farmers Ins. Exch. , 446 S.W.3d 761, 766 (Tex. 2014). And policy language is interpreted according to its ordinary, plain meaning. Id. ; Progressive Cty. Mut. Ins. Co. , 107 S.W.3d at 551.
Further, the endorsement to Wausau's policy states that "[w]e will not enforce our right against the person or organization *567 named in the Schedule." The schedule is limited to "[a]ny person or organization for whom the Named Insured has agreed by written contract to furnish this waiver." Thus, the endorsement is not ambiguous or unclear. It waives only Wausau's right to assert a claim against or sue an alleged tortfeasor (such as Western) if that tortfeasor is party to a written contract requiring the waiver. Here, the only parties to the written contract were Cactus and Western. Because Wedel is not a party to that contract, the endorsement does not apply to impair Wausau's rights as to him-which are the rights of reimbursement specified in section 417.002 of the Act. And to the extent the Court discusses the premiums paid by Cactus for the endorsement, how the premiums were calculated is beyond anything in this record other than the parties do not dispute that Cactus paid a premium for the endorsement to its policy. The question is: What did the endorsement do and thus what did Cactus pay for? The answer is: It clearly and unambiguously waived only Wausau's right to "enforce our right [to recover payments] against the person or organization named in the Schedule." That person or organization was not Wedel, it was the "Western Entities."
Noticeably absent from the contract between Western and Cactus, as well as from the endorsement, is any indication that Cactus or Western intended for Wedel or any other Cactus employee who was injured on the job to receive a double recovery in the nature of both workers' compensation benefits and recovery from Western on a third-party claim. Further, permitting Wedel to receive both workers' compensation benefits and a recovery from Western free of Wausau's right to reimbursement amounts to a clear benefit in violation of the endorsement's explicit provision stating that "[t]his endorsement shall not operate directly or indirectly to benefit anyone not named in the Schedule." To reiterate, Wedel is not named in the schedule.
The Court discusses the practicalities of the carrier's subrogation and reimbursement rights under the statute and the endorsement, and says that those rights cause problems in settling claims like those Wedel made against Western. Ante at 557. But such problems have existed since the Legislature enacted workers' compensation statutes and created the need to balance the interests of injured workers, carriers, and employers who pay premiums for insurance and whose premiums are affected by losses. There simply is unavoidable tension where multiple parties, with differing interests and motivations, are contesting liability for injuries, liquidating claims based on alleged liability for injuries, and allocating proceeds in settlement of claims. But those practicalities should not be the basis for interpreting language of an insurance policy endorsement. The language itself should be the basis. Nor should courts simply substitute their idea of a preferred settlement process for the unambiguous language of a binding contract. Fiess v. State Farm Lloyds , 202 S.W.3d 744, 753 (Tex. 2006) ("[W]here the language is plain and unambiguous, courts must enforce the contract as made by the parties ...." (quoting E. Tex. Fire Ins. Co. v. Kempner , 87 Tex. 229, 27 S.W. 122, 122 (1894) ) ). The Act is a detailed product of over one hundred years of adjusting various provisions in it by the Legislature with input from the various interests involved in the workers' compensation system. Sections 417.001 and 417.002 reflect that detail. So does the waiver endorsement promulgated by TDI. Adjustments to such detailed prescription for how subrogation and reimbursement are to work in the context of the Act should be left to the Legislature.
*568 IV. Case Law
The Court states that its decision "stand[s] on over twenty years of unanimous case law" and notes that it "glean[s] insight" from TDI's inaction in light of those decisions. Ante at 555. However, the case law stems from various courts of appeals and a federal district court. See Liberty Ins. Corp. v. SM Energy , No. H-12-3092, 2012 WL 6100303, at *7-9 (S.D. Tex. 2012) ; Am. Risk Funding Ins. Co. v. Lambert , 59 S.W.3d 254, 259 (Tex. App.-Corpus Christi-Edinburg 2001, pet. denied) ; Lumbermen's Mut. Cas. Co. v. Carter , 934 S.W.2d 912, 913 (Tex. App.-Beaumont 1996, no writ) ; Hartford Accident & Indem. Co. v. Buckland , 882 S.W.2d 440, 445 (Tex. App.-Dallas 1994, writ denied). And much of it emanates from and relies on decisions based on the language of repealed provisions predating the current Act. See, e.g. , Buckland , 882 S.W.2d at 444 (discussing article 8307 § 6a, Act of May 15, 1973, 63rd Leg., R.S., ch. 88, § 10, 1973, Tex. Gen. Laws 193 (repealed) ).
Wausau asserts that while the Buckland decision is the foundation for the courts of appeals' opinions that follow, the case does not actually support a conclusion that the policy waiver encompasses subrogation as well as reimbursement. I agree. The Court is correct that the Buckland opinion quotes a TDI waiver that is substantively the same as the one at issue in this case. Ante at 559 (citing Buckland , 882 S.W.2d at 441 ). In Buckland , however, the court of appeals stated, without analyzing the policy's language, that "a carrier's subrogation interest includes its right to reimbursement as well as its right to future amounts." Buckland , 882 S.W.2d at 445. Wausau contends that the court's conflation of subrogation and reimbursement extended the approved waiver language beyond its plain meaning. Again, I agree. As discussed above, the language of the TDI-originated form waiver simply does not address a carrier's statutory right of reimbursement.
The Court also notes that SM Energy addressed the same TDI waiver language and the issue was the same as presented here. Ante at 557-59 (citing SM Energy , 2012 WL 6100303, at *1 ). But again, without full analysis of the endorsement's language, the district court concluded that the endorsement waived the carrier's rights as to both subrogation and reimbursement on the basis that "[c]ourts applying Texas law do not distinguish between a carrier's subrogation and reimbursement rights in the Worker[s'] Compensation Act context." SM Energy , 2012 WL 6100303, at *9. I disagree with this analysis as Texas law-the Workers' Compensation Act-clearly distinguishes between the two rights. See TEX. LAB. CODE §§ 417.001, .002.
At the end of the day, while persuasive, the referenced opinions are not binding on this Court pursuant to our constitutional charge. TEX. CONST. art. IV, § 3 (stating that the Court's appellate jurisdiction shall be final). And the legislative acceptance doctrine-which the Court substantively references and which comes into play where interpretations of statutory law such as the sections of the Act involved here, are concerned-applies only where the relevant provisions have "been interpreted by a court of last resort or given a longstanding construction by a proper administrative officer." Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc. , 145 S.W.3d 170, 176 (Tex. 2004). This Court has never decided the issue before us today. And though the Court notes decisions of TDI administrative judges regarding the question, "[a]nother element of the legislative acceptance doctrine is that the statute at issue must be ambiguous. Under the doctrine of legislative acceptance, an administrative agency's *569 construction of a statute cannot contradict the statute's plain meaning." Fleming Foods of Tex., Inc. v. Rylander , 6 S.W.3d 278, 282 (Tex. 1999) (citation omitted). Moreover, appeals from both TDI decisions the Court references remain pending in the courts-one in a district court and one in a court of appeals. See Liberty Mut. Ins. Co. v. Trahan , No. 14-17-00528-CV (Tex. App.-Houston [14th Dist.] submitted Mar. 22, 2018); Liberty Mut. Fire Ins. Co. v. Ainsworth , No. 2016-45952 (165th Dist. Ct., Harris County, Tex. status report May 4, 2018).
The Court builds on its references and concludes that they "are consistent with the waiver's plain language." Ante at 560. But, as explained, neither the language of the endorsement nor that of sections 417.001 and 417.002 support the conclusion that subrogation and reimbursement are treated as one and the same. Authorities concluding otherwise are simply not consistent with language of the waiver and the relevant statutory provisions. Neither is the Court's conclusion.
Finally, while the "decades of settled and unanimous" case law the Court references does not serve as valid, binding precedent, even if it did, the doctrine of stare decisis is not absolute. See Sw. Bell Tel. Co. v. Mitchell , 276 S.W.3d 443, 447 (Tex. 2008). "[U]pon no sound principle do we feel at liberty to perpetuate an error, into which either our predecessors or ourselves may have unadvisedly fallen, merely upon the ground of such erroneous decision having been previously rendered." Id. (alteration in original) (quoting Willis v. Owen , 43 Tex. 41, 48-49 (1875) ). Errors, when discovered, should be corrected.
V. Conclusion
Insurance policies and their endorsements are to be construed according to their plain language. Here, the endorsement did just what Cactus and Western contracted for: it waived Wausau's right to sue or make a claim against Western for the payments it made to and for the benefit of Wedel. If, as the Court says, the "rationale" for Wausau's endorsement requires waiver of both the carrier's right of subrogation and its right of reimbursement, ante at 559, then the rationale should be effected by the parties, who contract for the waiver, and TDI, which prescribes the language for such waivers. But the solution is not for the Court to construe an unambiguous insurance policy endorsement to say something it does not say. I would reverse the judgment of the court of appeals and remand the case for further proceedings.

Wausau argues that the endorsement did not waive its statutory right to subrogation, only its right to recover for payments it made. In my view, the distinction, if any, is not determinative of the issue before us and need not be addressed because the endorsement did not waive Wausau's reimbursement right. The Court refers to the rights in question as Wausau's rights of subrogation and reimbursement. I will do likewise to avoid confusion.

Both James Wedel and his wife, Michelle, were parties to the suit filed against Western. James died while this matter was pending in the court of appeals. Any references to "Wedel" will encompass James, both James and Michelle, or Michelle, depending on the context. Wausau asserts, and Wedel does not dispute, that as of August 15, 2014, Wausau had paid over $1,548,822 in medical and income benefits to and for Wedel's benefit.

The Fortis Benefits policy provided:
Subrogation Right. Upon payment of benefits, We will be subrogated to all rights of recovery a Covered Person may have against any person or organization . This includes but is not limited to recoveries against such third party, against any liability coverage for such third party or against automobile insurance in the event a claim is made under the uninsured or underinsured motorist coverages. Such right extends to the proceeds of any settlement or judgment; but is limited to the amount of benefits We have paid. You must 1) do nothing to prejudice any right of recovery; 2) execute and deliver any required instruments or papers; and 3) do whatever else is necessary to secure such rights.
If We are precluded from exercising Our Subrogation Right, We may exercise Our Right of Reimbursement.
Right of Reimbursement. If benefits are paid under this plan, and any Covered Person recovers against any person or organization by settlement, judgment or otherwise, We have a right to recover from that Covered Person an amount equal to the amount We have paid. This includes but is not limited to recoveries against such third party, against any liability coverage for such third party or against automobile insurance in the event a claim is made under n.11 the uninsured or underinsured motorist coverages.
Fortis Benefits , 234 S.W.3d at 645 n.11.

The Act fairly consistently uses the phrase "the injured employee or the employee's beneficiaries," or a variation of that language. For convenience, I will simply refer to "the employee." When appropriate, the reference is intended to include both the employee and the employee's beneficiaries under the Act.