**Affirmed and Memorandum Opinion filed July 23, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-23-00444-CV

---

## MEHRAN RAHBAR, M.D., AND FARINAZ ARBAB, M.D., Appellants

## V.

## SOUTHAMPTON CIVIC CLUB, Appellee

---

**On Appeal from the 151st District Court
Harris County, Texas
Trial Court Cause No. 2022-05545**

---

## M E M O R A N D U M   O P I N I O N

Appellants Mehran Rahbar and Farinaz Arbab challenge the trial court's summary judgment and award of attorney's fees in favor of appellee Southampton Civic Club ("SHCC").  The Rahbars[1] argue that the trial court erred in interpreting a deed restriction to prohibit them from renting their home to persons other than family members; that SHCC is not the proper entity to enforce the subject deed

---

[1] The parties refer to appellants as the Rahbars, so we do as well.

restriction against them; and that the trial court abused its discretion in awarding SHCC attorney's fees. We overrule the Rahbars' issues and affirm the trial court's judgment.

## Background

The Rahbars own a lot with improvements (the "Property") located in Southampton Place Addition ("Southampton" or the "subdivision"), Block Number 42, Lot Number 17, known as 2135 Bissonnet Street, Houston, Texas 77005. The subdivision was placed on the market for home builders in 1923, following the execution of a trust agreement between E.H. Fleming, its developer, and the San Jacinto Trust Company, trustee. A reference incorporating the trust agreement and restrictions ("Basic Restrictions") was placed in each deed to lots sold in the subdivision, binding all lot owners to the Basic Restrictions. The Basic Restrictions were effective for an initial term of fifty years and subsequently extended in 1973 and in 2013.

Established as an unincorporated civic association in 1929, SHCC exists to preserve and protect the Basic Restrictions and to promote the maintenance, beautification, and welfare of the subdivision. SHCC was incorporated under the Texas Non-Profit Corporation Act in 2004. *See* Tex. Bus. Orgs. Code §§ 22.101 *et seq*. In 2011, SHCC filed a document entitled "Notice Relating to Deed Restrictions Summary for Southampton Place" (the "Notice") in the Harris County property records. The Notice included SHCC's summary of certain restrictions, such as those relating to setback lines and alley easements. The Notice directed interested persons to SHCC's internet website for a "detailed summary" of the applicable deed restrictions, as well as compliance procedures.

The Rahbars purchased the Property in 2010 and immediately began renting the house for one-year terms to as many as five unrelated persons, usually students attending a nearby university.

In 2022, SHCC sued the Rahbars for violating the following deed restriction:

> No apartment house, or duplex will be permitted in the Addition; the object of this provision being to prohibit multiple housing throughout the entire addition.

SHCC alleged that the Rahbars were leasing the Property to several, unrelated persons. SHCC sought declarations under the Texas Declaratory Judgment Act ("DJA") that the Basic Restrictions were valid and enforceable, that the Basic Restrictions prohibit the Rahbars from using the Property for multiple housing purposes or for any purpose other than as a residence for a single family, and that the Basic Restrictions prohibit the Rahbars from utilizing the Property primarily for financial gain rather than as a single-family residence. SHCC also sought permanent injunctive relief and attorney's fees.

The Rahbars filed a counterclaim to quiet title, alleging that the Notice was an invalid encumbrance on their title. They also sought declarations under the DJA concerning interpretation of the Basic Restrictions.

The parties filed competing motions for summary judgment. In an interlocutory order, the trial court found that the Rahbars are bound by the Basic Restrictions, which prohibit them from using the Property for anything other than a single-family residence. The court held that the Rahbars breached the Basic Restrictions and granted a mandatory injunction prohibiting them from leasing, renting, or using in any way the Property for multiple housing purposes or for any purpose other than as a single-family residence. In a separate order, the court

3

dismissed the Rahbars' counterclaims. In a final judgment, the trial court awarded SHCC its attorney's fees. The Rahbars filed a timely appeal.

## Standard of Review

We review a trial court's ruling on a motion for summary judgment de novo. *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 278 (Tex. 2018); *Texan Land & Cattle II, Ltd. v. ExxonMobil Pipeline Co.*, 579 S.W.3d 540, 542 (Tex. App.—Houston [14th Dist.] 2019, no pet.). To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). When both parties move for summary judgment on the same issue and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides, determine all questions presented, and, if we determine that the trial court erred, render the judgment the trial court should have rendered. *Tarr*, 556 S.W.3d at 278; *see also Wausau Underwriters Ins. Co. v. Wedel*, 557 S.W.3d 554, 557 (Tex. 2018) ("A declaratory judgment granted on a traditional motion for summary judgment is reviewed de novo.").

## Analysis

The Rahbars raise three issues on appeal. First, they argue that the trial court erred by granting declaratory and injunctive relief regarding the Basic Restrictions' prohibition against using the Property for anything other than as a residence for a single family. Second, they argue that the trial court erred by dismissing the Rahbars' counterclaims. Third, they challenge the trial court's award of attorney's fees.

## A.    SHCC's Motion for Summary Judgment

The summary judgment in favor of SHCC requires this court to review the trial court's interpretation of the Basic Restrictions.

This is not the first occasion for a court to interpret the exact deed restriction at issue.  In the first case to address the issue, a homeowner, Pardo, rented her house to a partnership for business purposes.  *Pardo v. Southampton Civic Club*, 239 S.W.2d 141, 142 (Tex. Civ. App.—Galveston 1951, writ ref'd).  SHCC sued Pardo for violating the Basic Restrictions and to enjoin her from using or causing her property to be used for any purpose other than as a dwelling and residence for a single family.  *Id.*  The court of appeals concluded that it was undisputed that the lots in Southampton "were restricted to the use for single family dwelling and for [certain] business purposes."  *Id.* at 143.  Specifically, all of the lots reserved for residential use "were designated and sold as integral parts of a 'high class exclusive residential' area and were restricted to the exclusive use of a residence of a single family."  *Id.* at 144.  Accordingly, the court of appeals affirmed the injunction against Pardo.

The next case was *Rudy v. Southampton Civic Club*, 271 S.W.2d 431 (Tex. App.—Waco 1954, writ ref'd n.r.e.).  The Rudys erected on their lot a garage apartment as a separate structure from their dwelling house and rented it to persons other than members of their family.  *Id.* at 432.  SHCC sued to enjoin the Rudys from using or permitting the use of their lot for any purpose other than a single-family dwelling and particularly from using or permitting to be used the garage apartment for the purpose of housing any person other than members of the Rudy family.  *Id.*  The court of appeals followed the *Pardo* court's "express[] [holding] that the use of the lot involved 'must be limited to a single family residence.'"  *Id.*

5

at 433 (quoting *Pardo*, 239 S.W.2d at 145). Thus, the court concluded that SHCC was entitled to injunctive relief as a matter of law.

In *Southampton Civic Club v. Couch*, 322 S.W.2d 516, 517 (Tex. 1959), SHCC sought to restrain a homeowner, Couch, from renting a room or rooms in his residence for lodging. Most of the lodgers were students. *Id.* The court held that the renting of a room or rooms in a private residence, which is merely incidental to its use as a family residence, does not violate a restriction limiting the use of the property to a single-family residence. *Id.* at 518. The court reasoned that there is no language in the Basic Restrictions that specifically forbids the renting of a room or rooms, and that a family home in which a spare room is incidentally rented is nonetheless a single-family residence. *Id.* at 519. The court remanded the case to the trial court for a new trial to determine the nature and extent of the use of the defendants' premises. *Id.* at 520. The court stated that if the evidence conclusively established that a particular defendant was operating a rooming or boarding house as a business or was "using his dwelling house primarily as a source of financial gain rather than as a residence for himself and his family and domestic servants, that activity should be enjoined." *Id.*

In *Ullrich v. Southampton Civic Club*, 373 S.W.2d 511, 511-12 (Tex. App.—Texarkana 1963, no writ), the Ullrichs rented their garage apartment to a university student, and SHCC sought and obtained injunctive relief to enjoin the Ullrichs from doing so. The court of appeals affirmed the trial court's injunction because the "the evidence established that the Ullrichs were renting, for financial gain, space on their property for use, and used, as a housekeeping unit" and thus were violating the Basic Restrictions. *Id.* at 513.

In *Southampton Civic Club v. Foxworth*, 550 S.W.2d 152, 153 (Tex. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.), SHCC alleged the Foxworths were

renting an apartment, located upstairs from their unattached garage, to a university student for profit, violating the Basic Restrictions. Our court, following *Couch*, concluded that the evidence established that the Foxworths rented the garage for financial gain in violation of the restrictions. *Id.* at 153-54. The court rendered judgment that the Foxworths be enjoined from renting the garage apartment as a source of financial gain. *Id.* at 154.

Finally, in *Finkelstein v. Southampton Civic Club*, 675 S.W.2d 271, 272 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.), the property owner, Finkelstein, without a valid partition of the original lot, attempted to subdivide her lot into two lots, each with its own separate residential structure—one of which was a frame building that Finkelstein had been renting to tenants. The court concluded that this violated the Basic Restrictions' multiple-housing provision:

> Summary judgment evidence showed that appellant Carol Finkelstein rented out the two-story wooden frame building to two young women not related to her or to each other, a clear violation of the prohibition against multiple family housing. Absent a valid partition of the original lot, rental of either building to a tenant violates the multiple housing prohibition so long as the other building is occupied by a family. Appellants have, in effect, sought to nullify the restriction's prohibition against multiple housing by simply creating multiple lots, while ignoring the limitations on partition imposed by the two earlier discussed restrictions. Such an attempted resubdivision constitutes an invalid infringement on the restriction's prohibition against multiple housing.

*Id.* at 277-78.

The foregoing authority makes clear that the Rahbars have violated the Basic Restrictions by renting their house for financial gain to persons unrelated to them. The Rahbars argue that the definition of "family" is too restrictive for modern usage, but we, as an intermediate appellate court, decline to deviate from

established precedent, and we are further persuaded by the uniform holdings of our sister courts. *See Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993) (per curiam) (explaining that Texas courts are obligated to follow higher Texas courts and the United States Supreme Court); *In re Mittelsted*, 661 S.W.3d 639, 658 (Tex. App.—Houston [14th Dist.] 2023, orig. proceeding) (under the doctrine of horizontal stare decisis, a court owes respect to its own precedents; three-judge panels of a court must follow materially indistinguishable decisions of earlier panels of the same court unless a higher authority has superseded that prior decision) (citing *Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022)).

We overrule the Rahbars' first issue.

## B.       The Rahbars' Motion for Summary Judgment

In their second issue, the Rahbars contend that the trial court erred by dismissing their counterclaim. According to the Rahbars, SHCC is not a property owners' association, and the Notice is not a valid dedicatory instrument governing the Rahbars' property.

Chapter 202 of the Property Code governs construction and enforcement of restrictive covenants. *See* Tex. Prop. Code §§ 202.002 *et seq*. A property owners' association or other representative designated by an owner of real property may initiate, defend, or intervene in litigation or an administrative proceeding affecting the enforcement of a restrictive covenant or the protection, preservation, or operation of the property covered by the dedicatory instrument. *Id.* § 202.004(b). For purposes of chapter 202, "property owners' association" means an incorporated or unincorporated association owned by or whose members consist primarily of the owners of the property covered by the dedicatory instrument and through which the owners, or the board of directors or similar governing body, manage or regulate the residential subdivision, planned unit development,

8

condominium or townhouse regime, or similar planned development. *Id.* § 202.001(2).

SHCC established that it is an incorporated association whose members consist of the owners of property covered by the dedicatory instrument. The dedicatory instrument is the original 1923 deed restrictions, which were extended in 1973 and 2013.[2] SHCC produced its articles of incorporation, which state that SHCC is a non-profit corporation organized to preserve, maintain, and protect the deed restrictions applicable to Southampton Place Addition, and to take all action necessary to promote the health, safety, and welfare of the subdivision. The corporation has one class of members, open to the residents or property owners in the subdivision who pay annual dues. According to SHCC's bylaws, it is governed by a 12-member board of directors, which has the power to, among other actions, enforce by legal means the provisions of the deed restrictions and the bylaws.

Thus, SHCC is considered a property owners' association for purposes of chapter 202 and may initiate or defend litigation affecting the enforcement of Southampton Place Addition's deed restrictions. *Id.* § 202.004(b). The Rahbars assert that SHCC "wrongfully and misleadingly claims its authority to regulate the subdivision," but they did not produce any evidence controverting SHCC's articles of incorporation or bylaws.

---

[2] "Dedicatory instrument" means each document governing the establishment, maintenance, or operation of a residential subdivision, planned unit development, condominium or townhouse regime, or any similar planned development. The term includes a declaration or similar instrument subjecting real property to:

    (A) restrictive covenants, bylaws, or similar instruments governing the administration or operation of a property owners' association;

    (B) properly adopted rules and regulations of the property owners' association; or

    (C) all lawful amendments to the covenants, bylaws, instruments, rules, or regulations.

Tex. Prop. Code § 202.001(1).

We turn to the second part of the Rahbars' argument, which is that SHCC filed an invalid recordation in the county deed records. In 2011, SHCC filed the Notice for the purpose of "providing information relating to the covenants, conditions and restrictions ('Restrictions') applicable to the property within Southampton Place." The Notice contains a recital that Southampton Civic Club, Inc., as successor to the unincorporated Southampton Civic Club, has "[o]ver the past 80 years . . . administered and enforced the Restrictions for the benefit of the owners of property within Southampton." In the Notice, SHCC directed interested persons to its internet website for a "detailed summary" of the applicable deed restrictions, as well as SHCC's compliance procedures.

The Notice is not an encumbrance and does not create a cloud of title. Under Texas law, an encumbrance is an interest in realty that diminishes its value and is a burden on its transfer. *City of Dayton v. Allred*, 68 S.W.2d 172, 178 (Tex. 1934); *Nationwide of Bryan, Inc. v. Dyer*, 969 S.W.2d 518, 521 (Tex. App.—Austin 1998, no pet.). Examples of encumbrances include liens, claims, easements, and servitudes. *Allred*, 68 S.W.2d at 178. Deed restrictions, such as the ones here, are also considered encumbrances. *Levine v. Turner*, 264 S.W.2d 478, 479 (Tex. App.—El Paso 1954, writ dism'd) ("As a general rule such restrictions as to the use to which premises may be put constitute encumbrances . . . .").

By filing the Notice, SHCC has gained no right or interest in the Rahbars' property. The Notice does not diminish the value of the Rahbars' property, nor does it burden the transfer of title. The Notice merely provides a written summary of an already existing encumbrance—i.e., the Basic Restrictions. The Notice is not an encumbrance on title. *See, e.g.*, *Dyer*, 969 S.W.2d at 521 (arbitration clause in home sales contract did not constitute an encumbrance on property).

10

We overrule the Rahbars' second issue.

## C.     Attorney's Fees

In their third issue, the Rahbars challenge the award of attorney's fees to SHCC.  Attorney Linda Glover testified by affidavit regarding fees incurred in prosecuting SHCC's affirmative claims.  Glover also testified regarding fees incurred by two other lawyers in defending against the Rahbars' counterclaims.  All three attorneys submitted contemporaneous billing records.

The Rahbars attack several aspects of the fee award, but they do not argue substantively that the award lacks legally or factually sufficient evidentiary support.  We address each of the Rahbars' arguments in turn.

### 1.     *Resolution by trial court instead of jury*

In the first part of their issue, the Rahbars assert in a heading that they "disputed and controverted the basis, reasonableness, necessity and amount of attorney's fees claimed by SHCC for prosecuting its claims."  However, the substance of the argument is that the trial court erred by deciding the fee issue rather than submitting the question of attorney's fees to a jury, so we limit our discussion to this point. *See* Tex. R. App. P. 38.1.

The Rahbars contend that they made a timely jury demand but the court "summarily" awarded SHCC its attorney's fees as a matter of law.  SHCC responds that the Rahbars waived their complaint by failing to timely object to the trial court's decision to hear the attorney's fees issue rather than a jury.  We agree with SHCC.

"When a party has perfected its right to a jury trial but the trial court instead proceeds to trial without a jury, the party must either object on the record to the trial court's action or indicate affirmatively in the record it intends to stand on its

11

perfected right to a jury trial." *Arredondo v. Betancourt*, 383 S.W.3d 730, 746 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *accord also Bank of Houston. v. White*, 737 S.W.2d 387, 388 (Tex. App.—Houston [14th Dist.] 1987, orig. proceeding) (holding that trial court was not authorized to remove case from jury docket once it has been properly placed thereon *if* "any party adversely affected objects to such removal").

The record here does not reflect that the Rahbars either affirmatively objected to the trial court's decision to remove the attorney's fee issue from a jury's consideration or indicated that they intended to stand on their right to a jury trial of this issue. At the hearing on SHCC's fee application, at which Dr. Mehran Rahbar appeared pro se and SHCC appeared represented by counsel, the judge asked whether SHCC intended to offer testimony or rely on the submitted affidavits. SHCC responded that it would rely on the affidavits. The judge agreed to this, saying, "Okay. Then I will give you a few minutes to start, and then I will let Dr. Rahbar respond. Okay?" SHCC's counsel indicated her agreement, but Dr. Rahbar did not answer. After SHCC presented argument and the judge invited Dr. Rahbar to respond, Dr. Rahbar said:

> I don't really understand why we're here today because everything has been in writing and it has been very inconvenient for me and my case award. So I'm not going to take the Court's time by repeating what I have already responded in my affidavit and I presented the responses and everything and I assume that you have read and I'm sure you have read all of them.

He also argued that the case law relied on by SHCC was inapplicable. At the end of the hearing, the judge stated, "I will take it under advisement and make a ruling and sign an order as to what amount, if any, of attorney's fees will be awarded." Dr. Rahbar made no objection.

12

Based on the record, we conclude that the Rahbars waived their appellate complaint regarding the trial court acting as fact finder. *See Walker v. Walker*, 619 S.W.2d 196, 198 (Tex. App.—Tyler 1981, writ ref'd n.r.e.) (explaining that even if jury demand was made and jury fee paid, party waives right to jury when he fails to object to proceeding without a jury when the case is called to trial; after the trial court rules adversely to a party, he cannot complain that he was entitled to have a jury, not the court, decide the fact question).

In another heading in their brief, the Rahbars assert that their expert's "controverting affidavit" was admitted over SHCC's objections, for the fact finder to consider. Again, however, the substance of this argument is that "the trial court erred by denying the jury determination of the necessity of SHCC's counsel's services, for which the fees were incurred" and that the "trial court's denial of jury trial was reversible error." The Rahbars do not argue substantively any fact questions purportedly raised by their expert's affidavit.

### 2. *Reversal of attorney's fees if merits ruling reversed*

In another part of their third issue, the Rahbars argue that, if we reverse the trial court's finding of breach of restrictive covenant, then we should also reverse the fee award. Because we are not reversing the trial court's summary judgment on any basis, this argument is moot. *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 534 S.W.3d 558, 595 (Tex. App.—San Antonio 2017) ("However, because we are not reversing the trial court's judgment with regard to the Non-Access Easement, we need not reverse the award of attorney's fees."), *aff'd*, 593 S.W.3d 324 (Tex. 2020).

3. *SHCC's capacity and standing to sue*

The Rahbars also contend that they "disputed and controverted SHCC's capacity to sue" and that the fee award was in error because SHCC "has no justiciable, proprietary interest in any specific property or properties within the Southampton subdivision." This argument challenges both capacity and standing, which are distinct concepts. *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996) ("A plaintiff has *standing* when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has *capacity* when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy.").

Standing is a necessary component of subject-matter jurisdiction and is determined at the time suit is filed in the trial court. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445-46 (Tex. 1993). An association has standing to sue when it satisfies a three-prong test: (1) the members must otherwise have standing to sue in their own right; (2) the interests it seeks to protect must be germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested may require the participation of individual members in the lawsuit. *See id.* at 447.

The first requirement "should not be interpreted to impose unreasonable obstacles to associational representation." *Id.* "Ordinarily, any person entitled to benefit under a restrictive covenant may enforce it." *Anderson v. The New Property Owners' Ass'n of Newport, Inc.*, 122 S.W.3d 378, 384 (Tex. App.—Texarkana 2003, pet. denied). "[G]enerally, an interested property owner may enforce a restrictive covenant." *Id.* at 384-85 (citing *Giles v. Cardenas*, 697 S.W.2d 422, 427 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.)). The record reflects that SHCC is a Texas nonprofit corporation whose members include

14

property owners in the subdivision. Under the Basic Restrictions, the right to "enforce such restrictions . . . shall be vested in the respective lot owners." SHCC members, as property owners, would have standing to bring this suit to enforce deed restrictions. *See id.* at 385. Accordingly, SHCC satisfies the first requirement for standing as an association. *See id.*

The record reflects that the primary purpose of SHCC is to preserve, maintain, and protect the deed restrictions covering Southampton Place Addition and to take all action necessary to promote the health, safety, and welfare of the subdivision. Because the interests SHCC seeks to protect in its suit are germane to the association's purpose, it satisfies the second prong of the test. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 447-48; *Anderson*, 122 S.W.3d at 385.

Finally, the claims SHCC asserts and the relief it requests do not require the participation of any individual members. *See Anderson*, 122 S.W.3d at 385. When, as here, an association seeks injunctive relief, it is reasonable to suppose that the relief sought will inure to the benefit of the injured members. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 448; *Anderson*, 122 S.W.3d at 385. SHCC did not need to prove the individual circumstances of its members to obtain such relief. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 448; *Anderson*, 122 S.W.3d at 385. Having met all three requirements, we conclude that SHCC, as an association, had standing to bring suit against the Rahbars for allegedly violating the Basic Restrictions.

With regard to capacity or authority, we have already determined above that SHCC had capacity to sue pursuant to section 202.004(b). *Garden Oaks Maint. Org. v. Chang*, 542 S.W.3d 117, 139 n.18 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("An entity meeting the definition of a POA under chapter 202 also has capacity to sue under section 202.004(b).").

In this same part of their issue in which they argue that SHCC lacked a justiciable interest, the Rahbars also argue that SHCC sought only an advisory opinion for future hypothetical adjudications. We disagree. SHCC's live pleading makes clear that it sued the Rahbars for breach of the deed restrictions. SHCC's answer makes clear that it is defending against the Rahbars' request for declarations. The trial court's resolution of these claims applies to the parties at hand and does not constitute an advisory opinion. *Lede v. Aycock*, 630 S.W.2d 669, 671 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.) ("An advisory opinion is one which does not constitute specific relief to a litigant or affect legal relations.").

4.      *Pleading*

The Rahbars contend that SHCC did not plead for attorney's fees for defending their DJA counterclaim.

The purpose of pleadings is to give adverse parties notice of each party's claims and defenses, as well as notice of the relief sought. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896-97 (Tex. 2000); *see also* Tex. R. Civ. P. 301 ("The judgment of the court shall conform to the pleadings."). Texas follows a "fair notice" standard of pleading, meaning we look to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant. *Daugherty v. Highland Capital Mgmt., L.P.*, No. 05-14-01215-CV, 2016 WL 4446158, at *3 (Tex. App.—Dallas Aug. 22, 2016, no pet.) (mem. op.).

In its live pleading, SHCC sought declaratory relief under the DJA and expressly sought its attorney's fees under the DJA. This was sufficient for the trial court to award attorney's fees to SHCC under the act. *See, e.g.*, *Nolte v. Flournoy*, 348 S.W.3d 262, 270 n.3 (Tex. App.—Texarkana 2011, pet. denied) ("A party is

16

also not required to request attorney's fees with specificity to be eligible for an award under the Declaratory Judgments Act, so long as a general request for attorney's fees exists."); *Zurita v. SVH-1 Partners, Ltd.*, No. 03-10-00650-CV, 2011 WL 6118573, at *8 (Tex. App.—Austin Dec. 8, 2011, pet. denied) (mem. op.) ("It is undisputed that AZR sought declaratory relief against the Landlord under the UDJA. Thus, the trial court was authorized to award attorneys' fees to any party with pleadings requesting them.").

### 5. *Expert disclosure*

The Rahbars argue that SHCC never disclosed an expert to testify as to reasonable fees incurred in defending against the Rahbars' counterclaims seeking declaratory relief. The record establishes otherwise.

SHCC disclosed its expert on attorney's fees by stating in part, "Ms. Glover is counsel for SHCC and will offer testimony regarding the necessity and reasonableness of fees and costs paid and incurred by SHCC to prosecute the claims asserted in this lawsuit." The Rahbars rely on SHCC's usage of the word "prosecute" to argue that the association did not disclose Glover as an expert on defensive fees.

We disagree. SHCC's disclosure provided the Rahbars with the general substance of counsel's anticipated testimony. *Corey v. Rankin*, No. 14-17-00752-CV, 2018 WL 5914531, at *8 (Tex. App.—Houston [14th Dist.] Nov. 13, 2018, no pet.) (mem. op.) ("A disclosure identifying an attorney's fees expert and stating that the expert will be testifying about the reasonableness and necessity of attorney's fees is sufficient to give the 'general substance' of that expert's testimony.").

17

6.    *Appellate fees*

The Rahbars argue SHCC did not plead for its prospective attorney's fees and failed to disclose any expert to testify as to the reasonableness and necessity of appellate fees.

The general rule is that a trial court's award of attorney's fees may include appellate attorney's fees. *Hunsucker v. Fustok*, 238 S.W.3d 421, 431 (Tex. App.— Houston [1st Dist.] 2007, no pet.); *Keith v. Keith*, 221 S.W.3d 156, 169 (Tex. App.—Houston [1st Dist.] 2006, no pet.).   SHCC's designation of Glover as an expert on attorney's fees gave the Rahbars sufficient notice of Glover's intended testimony, including appellate attorney's fees. *E.g.*, *Corey*, 2018 WL 5914531, at *9 (attorney's testimony supported award of appellate fees; expert designation did not purport to limit attorney's testimony to fees incurred as part of the trial court proceedings).

Further, the Rahbars did not argue below that SHCC's evidence of appellate fees was outside the pleadings.   Thus, the issue was tried by consent. *See Mansfield v. Mansfield*, No. 04-18-00551-CV, 2019 WL 6138984, at *4 (Tex. App.—San Antonio Nov. 20, 2019, pet. denied) (mem. op.) ("Because [the appellant's] attorney did not object to the absence of any pleadings when the trial court addressed the issue of an award of appellate attorney's fees, we hold the issue was tried by consent."); *Sheen v. Sheen*, No. 03-18-00358-CV, 2019 WL 2554570, at *5 (Tex. App.—Austin June 21, 2019, no pet.) (mem. op.) (issue of appellate attorney's fees was tried by consent when the appellee's attorney "testified regarding his trial and appellate fees without objection").

\*        \*        \*

For the foregoing reasons, we overrule the Rahbars' third issue in its entirety.

## Conclusion

We affirm the trial court's judgment.

/s/    Kevin Jewell
           Justice

Panel consists of Justices Jewell, Bourliot, and Poissant.